**HARPER & ROW PUBLISHERS, INC.,
et al., Petitioners,**

**v.**

**Honorable Bernard M. DECKER, United
States District Judge, Respondent.**

**No. 18008.**

United States Court of Appeals,
Seventh Circuit.

Feb. 4, 1970.

Order March 11, 1970.

Certiorari Granted May 4, 1970.
See 90 S.Ct. 1523.

Mayer, Friedlich, Spiess, Tierney, Brown & Platt, Schiff, Hardin, Waite, Dorschel & Britton, Sonnenschein, Levinson, Carlin, Nath & Rosenthal, Lee N. Abrams, H. Templeton Brown, Robert L.

Stern, Chicago, Ill., Weil, Gotshal & Manges, New York City, for William Morrow & Co., Inc.

W. Donald McSweeney, William A. Montgomery, Chicago, Ill., for The Bobbs-Merrill Co., Inc., G. P. Putnam's Sons.

Earl E. Pollock, Alan Silberman, Chicago, Ill., for Baker & Taylor Co.

Ira M. Millstein, Peter Gruenberger, New York City, for Charles Scribner's Sons, E. P. Dutton & Co., Inc., Grossett & Dunlap, Inc., Harper & Row Publishers, Inc., Henry Z. Walck, Inc.

Satterlee, Warfield & Stephens, White & Case, Greenbaum, Wolff & Ernst, Linden & Deutsch, Shea, Gallop, Climenko & Gould, New York City, Leibman, Williams, Bennett, Baird & Minow, Chadwell, Keck, Kayser, Ruggles & McLaren, Brown, Fox & Blumberg, Winston, Strawn, Smith & Patterson, Bergstrom & Olson, Bell, Boyd, Lloyd, Haddad & Burns, McDermott, Will & Emery, Chicago, Ill., Choate, Hall & Stewart, Conrad W. Oberdorfer, Brinton P. Roberts, Boston, Mass., for Houghton Mifflin Co.

William E. Stockhausen, John Horton, New York City, for Holt, Rinehart and Winston, Inc.

Earl A. Jinkinson, John W. Stack, Chicago, Ill., for Franklin Watts, Inc.

Edgar E. Barton, Kevin L. Carroll, New York City, for McGraw-Hill Book Co.

John J. McHugh, Chicago, Ill., for Charles M. Gardner Co., Imperial Book Co., Associated Libraries, Inc., Melton Book Co., Inc., Sather Gate Book Shop.

Leo Rosen, Roger Hunting, New York City, for Thomas Y. Crowell Co., David McKay Co., Inc.

Samuel Weisbard, David Porter, Chicago, Ill., for Golden Press, Inc.

Bella L. Linden, David Blasband, New York City, for The MacMillan Co.

John T. Loughlin, John C. Christie, Charles A. Tausche, Chicago, Ill., for E. M. Hale and Co.

Bruce Hecker, New York City, David P. List, Kenneth A. Manaster, Chicago, Ill., for Campbell & Hall, Inc.

Nathan Blumberg, Robert W. Bergstrom, Chicago, Ill., for Follett Library Book Co.

Lee A. Freeman, Lee A. Freeman, Jr., Chicago, Ill., William J. Scott, Atty. Gen., John P. Meyer, Sp. Asst. Atty. Gen., State of Ill., Chauncey H. Browning, Jr. Atty. Gen., Gene Hal Williams, Deputy Atty. Gen., State of W. Va., Theodore L. Sendak, Atty. Gen., Wendell C. Hamacher, Asst. Atty. Gen., State of Ind., Crawford C. Martin, Atty. Gen., Richard W. Chote, Asst. Atty. Gen., State of Tex., Paul W. Brown, Atty. Gen., Donald Weckstein, Ted B. Clevenger, Asst. Attys. Gen., State of Ohio, Douglas M. Head, Atty. Gen., Roger E. Montgomery, Asst. Atty. Gen., State of Minn., Robert W. Warren, Atty. Gen., George F. Sieker, Theodore L. Priebe, Asst. Attys. Gen., State of Wis., Kent Frizzel, Atty. Gen., J. Eugene Balloun, Special Asst. Atty. Gen., State of Kan., Raymond F. Simon, Corp. Counsel, City of Chicago, John A. Murray, St. Paul, Minn., for City of St. Paul, and others, David J. Young, Columbus, Ohio, for Archbishop and Bishops of the Six Catholic Dioceses in Ohio, Robert E. Kendrick, Deputy Metropolitan Atty., Metropolitan Government of Nashville and Davidson County, Tenn., for respondents Honorable Bernard M. Decker and the Treble Damage Plaintiffs.

Before KILEY, FAIRCHILD and CUMMINGS, Circuit Judges.

PER CURIAM.

In more than forty separate antitrust actions brought in eight judicial districts, plaintiffs, state and local governments, public schools, and public libraries, sought damages from twenty-three defendants (petitioners here), publishers and wholesalers, for alleged conspiracies to inflate the prices for children's editions of library books. Pursuant to 28 U.S.C. § 1407 these actions were transferred for consolidated discovery and pretrial proceedings to the United

States District Court for the Northern District of Illinois, Eastern Division, the Honorable Bernard M. Decker, presiding. Petitioners seek mandamus to compel the district judge to vacate an order dated October 17, 1969 insofar as it permitted plaintiffs to inspect and copy certain memoranda, all but one of which were prepared by attorneys while "debriefing" a number of persons (each an employee or former employee of one of petitioners) shortly after each had testified before a federal grand jury investigating various aspects of the publishing industry.

Plaintiffs sought production of these memoranda under Rule 34, F.R.Civ.P. Petitioners countered with the claim that the debriefing memoranda were protected by the attorney-client privilege or as attorneys' work product. The judge ordered petitioners to submit the memoranda under seal, and to file a precise factual statement setting forth the circumstances of the preparation of each.

The judge did not examine the memoranda. In every instance but two, he decided that neither an attorney-client privilege nor any status as work product excused discovery.

The judge refused to make a certification under 28 U.S.C. § 1292(b), for the purpose of appeal. Petitioners sought mandamus, and because an appeal, ultimately, from the final decision would be an inadequate remedy, we ordered an answer and briefs.

The claims made by petitioners fall under the following topics: (1) Whether the relationship between the person interviewed and the attorney was such as to make the communication privileged. (2) Whether the relationship between the person interviewed and the attorney's corporate client was such as to make the communication privileged. (3) Whether the memoranda were protected work product of the attorney. (4) Whether good cause was shown for discovery of work product.

(1) *Whether the relationship between the person interviewed and the attorney was such as to make the communication privileged.*

The judge had before him assertions on this point in affidavits and depositions. In at least three instances (Davidson, Rose and Rowe), there was a difference between the statement of the attorney and of the person interviewed which raised a degree of ambiguity. There was at least one assertion of the existence of a personal attorney-client relationship with respect to Moorman, Hood, Thompson, Sciosia, Patella, Guerney, Heidelberger, Stokes, Street, Davidson, Rose, Rowe, Callaway, and witnesses "A" and "B" of Golden Press.

The judge decided that there was no personal attorney-client relationship in these instances because it failed to appear that the attorney did (1) render personal legal advice to the witnesses, (2) advise them on personal matters, or (3) bill them for services. He concluded that the witnesses talked to the attorneys as a favor to the respective corporations.[1]

Petitioners can not assert the privilege of the individuals, if such privilege existed. The attorneys could presumably assert their obligation to the individuals, although the attorneys are before this court only as counsel for petitioners.

In any event we do not find the existence of personal attorney-client relationships so clearly established that mandamus is appropriate to compel the district court to recognize the privilege which would arise therefrom.

(2) *Whether the relationship between the person interviewed and the attorney's corporate client was such as to make the communication privileged.*

Some of the persons interviewed were no longer employees at the time of the interview; others were employed by one of petitioners at the time of interview, but were interviewed by counsel for an-

1. The Bonsal memorandum is not involved in this proceeding. The judge found a personal attorney-client relationship and held the memorandum privileged.

another petitioner. Neither group need be considered under this topic.

Messrs. Moorman, Hood, Thompson, Sciosia, Patella, Guerney, Heidelberger, Rowe (as to Thomas Y. Crowell Company), Stokes, Davidson, Callaway, Witness A of Golden Press, Walker, Dyckman, Mitchell, Andrus, and Hoocker were employees of the corporate client at the time of the interview. It is sufficiently clear that each employee made his disclosure to the attorney at the direction of his corporate employer and on its behalf; and that the subject matter of his grand jury testimony and of the debriefing interview was germane to the duties of his employment. On the other hand, although some of these employees had supervisory or even policy making responsibilities with respect to the branch of the corporate business with which they worked, it was not demonstrated that any of these employees was in a position to control or take a substantial part in a decision about action which the corporation may take upon the advice of the attorney, nor that he was a member of a group having that authority.[2]

The district judge substantially followed the "control group" test of the relationship between corporate client and persons making the communication to the attorney which must exist if the communication is to be protected by the corporation's attorney-client privilege. This test was formulated by Judge Kirkpatrick in City of Philadelphia v. Westinghouse Electric Corp. (E.D.Pa., 1962), 210 F.Supp. 483. A similar test appears in Rule 5-03(a) (3), Preliminary Draft of Proposed Rules of Evidence for the United States District Courts and Magistrates, March, 1969.

If the control group test be wholly adequate, it has not been shown that the district judge erred in his application of it.

Judge Kirkpatrick's control group test has been applied by other courts. *E. g.*, Natta v. Hogan (10th Cir., 1969), 392 F.2d 686, 692; Garrison v. General Motors Corp. (S.D.Cal., 1963), 213 F.Supp. 515. It has been criticized. Burnham, Confidentiality and the Corporate Lawyer: The Attorney-Client Privilege and "Work Product" in Illinois, 56 Ill.B.J. 542, 545-48 (1968); Heininger, The Attorney-Client Privilege as it Relates to Corporations, 53 Ill.B.J. 376, 384 (1965). Broader tests have been suggested. See Pye, Fundamentals of the Attorney-Client Privilege, 15 Prac.Law. 15, 19 (Nov. 1969); Maurer, Privileged Communication and the Corporate Counsel, 28 Ala.Law. 352, 375 (1967); D. I. Chadbourne, Inc. v. Superior Court (1964), 60 Cal.2d 723, 36 Cal.Rptr. 468, 388 P.2d 700, 709.

We conclude that the control group test is not wholly adequate, that the corporation's attorney-client privilege protects communications of some corporate agents who are not within the control group, and that in those instances where the order here under attack must rest entirely upon the control group test, the order is unlawful.

It is clear that we are not dealing in this case with the communications of employees about matters as to which they are virtually indistinguishable from bystander witnesses; employees who, almost fortuitously, observe events which may generate liability on the part of the corporation. We express no opinion with respect to communications by employees who fall in that class.

We conclude that an employee of a corporation, though not a member of its control group, is sufficiently identified with the corporation so that his communication to the corporation's attorney is privileged where the employee makes the communication at the direction of his superiors in the corporation and where the subject matter upon which the attorney's advice is sought by the corporation and dealt with in the communi-

2. The Bonsal and Milne memorandum are not involved in the present proceeding. The judge found than Bonsal and Milne were members of the control group of their employer, and held their communications privileged.

492

cation is the performance by the employee of the duties of his employment.

■ And because maintenance of the attorney-client privilege up to its proper limits has substantial importance to the administration of justice, and because an appeal after disclosure of the privileged communication is an inadequate remedy, the extraordinary remedy of mandamus is appropriate.

*(3) Whether the memoranda were protected work product of the attorney.*

■ We think that the district judge incorrectly suggested that some of the memoranda did not qualify as work product because "the lawyers functioned primarily as investigators." Where an attorney personally prepares a memorandum of an interview of a witness with an eye toward litigation such memorandum qualifies as work product even though the lawyer functioned primarily as an investigator. See Hauger v. Chicago, Rock Island, and Pacific R. Co. (7th Cir., 1954), 216 F.2d 501; United States v. American Optical Co., 37 F.R.D. 233, 238 (E.D.Wis., 1965); United States v. Aluminum Co. of America, 34 F.R.D. 241, 242–243 (E.D.Mo., 1963). Indeed, the qualified privilege might even attach to a document prepared under the supervision of the attorney even though not drafted by the attorney himself. Alltmont v. United States (3rd Cir., 1950), 177 F.2d 971, cert. den. 339 U.S. 967, 70 S.Ct. 999, 94 L.Ed. 1375 (1950). Of course, the less the lawyer's "mental processes" are involved, the less will be the burden to show good cause. United States v. Swift & Co. (N.D.Ill., 1959), 24 F.R.D. 280, 284.

*(4) Whether good cause was shown for discovery of work product.*

The judge made specific findings of good cause for permitting plaintiffs to examine the grand jury testimony of nine of the persons who were later interviewed by the attorneys. Three of them are not involved in the present proceeding. The debriefing memoranda of five of them, Callaway, Dyckman, Hood, Sciosia and Thompson, we have held pro-

tected by the attorney-client privilege of their employers. Rust is the one remaining. The judge found, from comparison of his deposition with his grand jury testimony, that there were material discrepancies and failures to recall significant facts. It seems clear that, insofar as the character of this memorandum as work product remains relevant, good cause was properly found.

■ We are unable to determine whether the district judge inspected any depositions other than those taken from the above mentioned nine. As to the remaining memoranda, the determination of good cause seems to rest generally on a finding that a six year lapse of time would inevitably cause memories to dull coupled with findings apparently based on conclusions regarding the deficiencies of the nine depositions examined. In these instances more specific findings as to each individual would have been better. See Hauger v. Chicago, Rock Island & Pacific Railroad Co. (7th Cir., 1954), 216 F.2d 501, 505. We conclude, however, that lack of good cause has not been made to appear sufficiently for issuance of a writ of mandamus. Thus the order under attack will stand as to all debriefing memoranda except in those instances where we have determined in part (2) above that the corporation's attorney-client privilege protects from discovery.

A writ of mandamus will issue compelling respondent district judge to exempt from his order of October 17, 1969, the debriefing statements of the following: Moorman, Hood, Thompson, Sciosia, Patella, Guerney, Heidelberger, Rowe (as to Thomas Y. Crowell Company), Stokes, Davidson, Callaway, Witness A of Golden Press, Walker, Dyckman, Mitchell, Andrus, and Hoocker, and to order the return of each of those debriefing statements to the defendant which produced it. In all other respects the petition for mandamus is denied. Petitioners are to submit a proposed writ following the procedure prescribed by Rule 19, F.R.A.P. for settlement of judgments enforcing orders of agencies.

## ORDER

On February 4, 1970 an opinion was filed deciding that a writ of mandamus will issue and directing settlement of the form of the writ (see Rule 36, F.R.A.P.) upon submission of a proposed writ by petitioners, following the procedure prescribed by Rule 19, F.R.A.P. for settlement of judgments enforcing orders of agencies.

On February 12, 1970, petitioners filed a proposed writ of mandamus. Respondents did not file a counter proposal pursuant to Rule 19, F.R.A.P. Except for one matter, herein referred to as the Andresen memorandum, the writ proposed by petitioners is deemed to conform with our opinion.

### The Andresen memorandum.

On February 12, petitioners filed a motion asking that we include the debriefing memorandum of Bruce Andresen among those listed in our opinion and our writ, to be exempted from respondent's order of October 17, 1969 and to be returned to the defendant which produced it. Petitioners assert that Bruce Andresen was an employee of petitioner Baker & Taylor Co. and that his debriefing memorandum is protected by the attorney-client privilege of Baker & Taylor Co., the same as that of Hood, Moorman, and Thompson. Respondents assert that Andresen was formerly employed by Golden Press, and we note that petitioners include in the proposed writ the statement taken from grand jury witness Golden Press "B–1", but petitioners claim that their motion relates only to the debriefing memorandum of Andresen given to counsel for Baker & Taylor Co.

We prefer to leave the resolution of any factual dispute to the district court. The writ of mandamus in final form will not include Andresen (nor Golden Press "B") in the list of grand jury witnesses the debriefing statements of whom will be ordered returned, but will include a direction that: "With respect to witness Bruce Andresen, the Honorable Bernard M. Decker shall determine whether, consistently with part (2) of our opinion, Andresen's debriefing memorandum produced by Baker & Taylor Co. or Golden Press 'B–1' is protected by the attorney-client privilege of Baker & Taylor Co., and shall deal with its accordingly."

### The Rust and Mathiesen memoranda.

Two petitioners ask for clarification and modification of our opinion so as to compel respondent to order the return of the debriefing memoranda of Paul Rust and John Mathiesen. These men were not employed by any of petitioners, but by another corporation, E. M. Hale & Co. It is claimed that Hale was an agent of two petitioners, and therefore that the attorney-client privilege of these two petitioners protects the communication between Rust and Mathiesen and petitioners' attorneys. Petitioners note that our opinion dealt with certain communications by an employee of the corporation asserting the privilege and did not refer to such communications by an agent who was not an employee. But whether or not a corporation's privilege will extend to a communication by its own agent who is not its employee, we are satisfied that the particular relationship of Rust and Mathiesen to the corporate petitioners does not entitle petitioners to protection against disclosure of the Rust and Mathiesen communications with petitioners' attorneys.

### Costs.

Petitioners and respondents each seek allowance of costs in this proceeding in this court, virtually as if it were an appeal, subject to Rule 39, F.R.A.P. Petitioners seek $2,586.96 and respondents $1,141.13. Rule 39 is not literally applicable. We did not include, any direction as to costs in our opinion, the petition was granted in part, denied in part, and we conclude in our discretion that no party is to recover costs in this proceeding in this court.

Accordingly, it is ordered,

(1) The form of the writ of mandamus will be as proposed by petitioners

February 12, 1970, except (a) the name "Golden Press 'B–1'" will be omitted from the 6th and 7th lines from the bottom of page 2 and the name "Andresen" will be omitted from the third line from the bottom of page 2 and (b) there shall be added an additional paragraph, as follows:

"With respect to witness Bruce Andresen, the Honorable Bernard M. Decker shall determine whether, consistently with part (2) of our opinion, Andresen's debriefing memorandum produced by Baker & Taylor Co. or Golden Press 'B–1' is protected by the attorney-client privilege of Baker & Taylor Co., and shall deal with it accordingly."

(2) Said writ shall not, however, be issued before expiration of the stay ordered February 11, or any extension thereof.

(3) The application of petitioners to add the Rust and Mathiesen memoranda to the list of those protected from discovery by our writ of mandamus is denied.

(4) The applications of the parties for recovery of costs are each denied.