**IOWA BEEF PROCESSORS, INC., Appellant,**

v.

**Hughes A. BAGLEY, Appellee.**

**No. 78–1855.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 9, 1979.

Decided Feb. 7, 1979.

Certiorari Denied April 16, 1979.

See 99 S.Ct. 1997.

Rehearing Denied Aug. 13, 1979.

James T. Malysiak and Edward W. Rothe of Freeman, Rothe, Freeman & Salzman, Chicago, Ill., for appellant.

John M. Fitzgibbons, Sp. Counsel, Congress of the U. S., House of Representative, Committee on Small Business, Washington, D. C., for appellee.

Before BRIGHT, HENLEY and McMILLIAN, Circuit Judges.

HENLEY, Circuit Judge.

Iowa Beef Processors, Inc. (IBP) appeals from the district court order which partially lifted a protective order entered in the course of discovery proceedings in this diversity suit. Treating the notice of appeal as a petition for a writ of mandamus, we grant the writ, vacate the district court's order, and remand the case with directions to reinstate, in full, the protective order.

## I.

IBP, which is described in the briefs as the world's largest meat packing concern, has been the target of numerous private antitrust suits in recent years. Many of these lawsuits have been brought by members of an organization calling itself the Meat Price Investigators Association and have been pursued by two lawyers, Lex Hawkins and John Cochrane. A number of these cases have been transferred to the United States District Court for the Northern District of Texas for consolidated pretrial proceedings. *See In re Beef Industry Antitrust Litigation*, 432 F.Supp. 211 (Jud. Pan.Mult.Lit.1977); *In re Beef Industry Antitrust Litigation*, 419 F.Supp. 720 (Jud. Pan.Mult.Lit.1976). This antitrust litigation has, in turn, generated a massive amount of collateral litigation.

The instant case was begun by IBP in the Northern District of Iowa on August 1, 1977. IBP sued a number of defendants including Hawkins, Cochrane, and one Hughes A. Bagley, a former vice president of IBP. In its complaint, IBP alleged that Bagley had taken a number of documents with him when he left IBP's employ in 1975 and that these documents contained confidential business information which, if disclosed, would damage IBP's business. IBP further alleged that Bagley had disclosed certain confidential information and records to Hawkins, Cochrane, and others in violation of various contractual obligations and common law fiduciary duties. The case came before Chief Judge McManus who on February 13, 1978 issued an order deciding a number of pretrial motions. In part, the order granted IBP's motion for a protective

order preventing disclosure of IBP's confidential business information and limiting its use to defense counsel in the Iowa case and to Hawkins and Cochrane in connection with Texas antitrust cases.

Over a period of time, the House Subcommittee on SBA and SBIC Authority and General Small Business Problems (the Subcommittee) of the House Committee on Small Business has become interested in pricing practices in the meat industry. In that connection, the Subcommittee served Hawkins and one Glen L. Freie with congressional subpoenas duces tecum compelling them to produce a number of documents, including some which were subject to a protective order issued in connection with the Texas antitrust cases.[1] Hawkins and Freie moved to dissolve the protective order. Their motion was denied by United States District Judge William M. Taylor, who held that the Subcommittee's attempt to subpoena the documents covered by the protective order violated the due process clause. *In Re Beef Industry Antitrust Litigation,* 457 F.Supp. 210 (N.D.Tex.1978). An appeal from that decision was recently dismissed by the Fifth Circuit, *Smith et al. v. National Provisioner et al.,* 589 F.2d 786 (5th Cir. 1979).

Frustrated in its efforts to obtain this material in the Texas proceedings, the Subcommittee changed tactics. In late October, 1978 it served a similar subpoena duces tecum on Bagley, requiring him to produce a number of documents covered by Judge McManus' February 13 protective order. Bagley moved to dissolve the protective order and IBP opposed the motion. By order filed November 24, 1978 the district court granted Bagley's motion and partially lifted the protective order to the extent necessary to allow Bagley to comply with the subpoena. It is from this order that IBP appeals.

In a telephone conversation John M. Fitzgibbons, Special Counsel to the Subcommittee, was apprised of the district court's or-

der the day it was entered. On November 27 a Subcommittee investigator, Nick Wultich, appeared at the office of Bagley's counsel and took physical possession of seven boxes of documents.

IBP's counsel learned of the order on November 28 and subsequently learned that the Subcommittee had acquired the documents. On November 30 IBP filed a notice of appeal from the order lifting the protective order. On December 4 IBP filed a motion for a stay and other appropriate relief in this court. By order dated December 4 Judge Henley stayed the district court order pending a hearing before a panel of the court and recited an agreement whereby the Subcommittee and its staff would take no action with respect to the documents until, and including, December 16. The matter came on for a hearing before this panel on December 12, and on December 14 we issued an order denying the motion for a stay, but ordering the appeal expedited. *Iowa Beef Processors, Inc. v. Hughes A. Bagley,* 588 F.2d 638 (8th Cir. 1978).

Despite the strenuous efforts of counsel to persuade us otherwise, we find that the case in its current posture presents a relatively narrow question, *i. e.,* did the district court abuse its discretion in granting Bagley's motion to lift the protective order? Prior to addressing this question, however, we must first examine our jurisdiction.

## II.

■ The district court order partially lifting the protective order is clearly not a "final decision" as that term is used in 28 U.S.C. § 1291, because the order is not "one which ends the litigation . . . and leaves nothing for the court to do but execute the judgment." *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945). Thus, unless the order falls within a statutory or judicially-created exception to the finality doctrine, appellate review at this time is premature.

---

1. In addition to the two subpoenas served by the Subcommittee on SBA and SBIC Authority and General Small Business Problems, two subpoenas were served by the Subcommittee on

Oversight and Investigation of the Interstate and Foreign Commerce Committee of the House of Representatives. The latter subcommittee is not involved in the instant case.

The order is not appealable under the Interlocutory Appeals Act, 28 U.S.C. § 1292. The order is not one granting or denying an injunction under § 1292(a)(1) nor did IBP move for certification under § 1292(b).

IBP argues that the order partially lifting the protective order is a "collateral order" within the meaning of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 122, 93 L.Ed. 1528 (1949). Most courts, including this one, have held that orders compelling the production of documents or testimony are not appealable as collateral orders or otherwise. *See, e. g., Miller v. Reighter*, 581 F.2d 1181 (8th Cir. 1978); *Gialde v. Time, Inc.*, 480 F.2d 1295 (8th Cir. 1973); *Childs v. Kaplan*, 467 F.2d 628 (8th Cir. 1972); *Borden Co. v. Sylk*, 410 F.2d 843 (3d Cir. 1969); *Paramount Film Distributing Corp. v. Civic Center Theatre, Inc.*, 333 F.2d 358 (10th Cir. 1964). We review an order partially lifting a protective order as the functional equivalent of an order compelling production of documents or testimony and find the reasoning of the above-listed cases to be persuasive in this case. As the court observed in *Borden Co. v. Sylk, supra*, 410 F.2d at 845–46:

> We have detected what appears to be an irresistible impulse on the part of appellants to invoke the 'collateral order' doctrine whenever the question of appealability arises. Were we to accept even a small percentage of these sometime exotic invocations, this court would undoubtedly find itself reviewing more 'collateral' than 'final' orders.

> \*   \*   \*   \*   \*   \*

Every interlocutory order involves, to some degree, a potential loss. That risk, however, must be balanced against the need for efficient federal judicial administration as evidenced by the Congressional prohibition of piecemeal appellate litigation. To accept the appellant's view is to invite the inundation of appellate dockets with what have heretofore been regarded as nonappealable matters.

Accordingly, we hold that we have no appellate jurisdiction. This does not, however, end our consideration of possible bases of jurisdiction.

As an alternative to appellate jurisdiction, IBP contends that this is an appropriate case for us to invoke our discretionary writ-issuing authority under the All Writs Act, 28 U.S.C. § 1651(b),[2] and issue a writ of mandamus compelling reinstatement of the protective order and/or return of the documents.[3]

We begin by noting that the power conferred by the All Writs Act "is meant to be used only in the exceptional case where there is clear abuse of discretion or 'usurpation of judicial power.' " *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 383, 74 S.Ct. 145, 148, 98 L.Ed. 106 (1953). In addition, invocation of power under the Act must be carefully circumscribed, lest appellate courts find themselves reviewing "nonappealable orders on the mere ground that they may be erroneous." *Will v. United States*, 389 U.S. 90, 98 n.6, 88 S.Ct. 269, 275, 19 L.Ed.2d 305 (1967). Bearing in mind these salutary and well-established restrictions, we nevertheless conclude that this case presents an appropriate occasion for us to invoke our power under the All Writs Act.

First, a number of courts, including this one, have found mandamus to be an appropriate vehicle to review orders compelling the production of documents or testimony

---

**2.** The Act provides:

The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

**3.** Although we have occasionally treated a notice of appeal as a petition for a writ of mandamus, *see, e.g., Wilkins v. Erickson*, 484 F.2d 969, 971 (8th Cir. 1973), we emphasize that we will not do so as a matter of course in every case where questions about appellate jurisdiction are raised. In cases such as the instant one, however, where the propriety of mandamus was raised from the outset, where the mandamus issue has been fully briefed, and where the interests of the district court have been actively presented, the notice of appeal may properly be treated as a petition for a writ of mandamus.

claimed to be privileged or covered by other more general interests in secrecy. *See, e. g., Diversified Industries, Inc. v. Meredith,* 572 F.2d 596 (8th Cir. 1978) (en banc) (attorney-client privilege); *Usery v. Ritter,* 547 F.2d 528 (10th Cir. 1977) (disclosure of identity of informer in FLSA case); *Breed v. United States Dist. Ct.,* 542 F.2d 1114 (9th Cir. 1976) (disclosure of personnel and inmate files of state youth authority); *Pfizer, Inc. v. Lord,* 456 F.2d 545 (8th Cir. 1972) (attorney-client privilege); *United States v. United States Dist. Co.,* 444 F.2d 651 (6th Cir. 1971), *aff'd,* 407 U.S. 297, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972) (disclosure to conspiracy defendant of his monitored conversations); *Harper & Row Publishers, Inc. v. Decker,* 423 F.2d 487 (7th Cir. 1970), *aff'd by an equally divided court,* 400 U.S. 348, 91 S.Ct. 479, 27 L.Ed.2d 433 (1971) (attorney-client privilege); *Hartley Pen Co. v. United States Dist. Ct.,* 287 F.2d 324 (9th Cir. 1961) (disclosure of secret formula acquired under license forbidding disclosure). In this case, IBP claims that the documents disclosed to the Subcommittee are covered by the attorney-client privilege and/or constitute trade secrets in the nature of confidential business information.[4]

Second, the unique circumstances in which disclosure of these materials was allowed give rise to serious policy considerations which we deem sufficiently compelling to require immediate appellate attention. The parties have not cited, nor has our research disclosed, any case involving comparable facts. In addition to the uniqueness of the problem, it appears that the Subcommittee is engaged in an ongoing investigation. Because it is not inconceivable that other material generated in connection with this litigation may be sought by the Subcommittee, the questions presented here may well recur prior to any opportunity to review a final judgment.

Having found this case to be appropriate for review by way of mandamus, we turn to the merits of the district court's order.

### III.

■■■ On February 13, 1978 the district court entered a protective order restricting use of IBP business information to defense counsel in the instant case and to Cochrane and Hawkins for the purposes of the Texas antitrust cases. In so doing, the court implicitly conceded that any further disclosure would unduly harm IBP.[5] Yet, on November 24, without any showing that intervening circumstances had in any way obviated the potential prejudice to IBP, the court allowed disclosure of these documents to the Subcommittee without any constraints on the Subcommittee's use thereof.

Even more important than this abrupt and unexplained turnabout is the fact that the documents ordered disclosed to the Subcommittee were an important part of the subject matter of the underlying lawsuit. That is, IBP alleged that Bagley had breached both contractual and fiduciary obligations to IBP by disclosing the contents of these documents and sought an injunction preventing further disclosure and compelling the return to IBP of all such documents. In these circumstances, the district court should have maintained the status quo by carefully limiting disclosure of these documents pending determination of the merits of IBP's claim. The court's order allowing disclosure to the Subcommittee, without any limitation on its use of the documents, could well render moot in part IBP's claims for relief in the underlying lawsuit.[6]

---

4. The order of February 13 granted IBP's motion for a protective order only to the extent that the material in question constituted confidential business information. In the same order, the district court rejected IBP's claim of attorney-client privilege. Accordingly, we are concerned solely with the question of allegedly confidential business information.

5. The party requesting a protective order must initially show that the information sought to be protected is within the scope of Rule 26(c) and that he might be harmed by its disclosure. 8 C. Wright & Miller, Federal Practice and Procedure, § 2043 at 300–01 (1970).

6. We, of course, express no opinion as to the merit, if any, of IBP's claims for relief in the underlying lawsuit.

On this record, then, we are compelled to conclude that the district court's order partially lifting the protective order was a clear abuse of discretion. Accordingly, we grant the petition for a writ of mandamus, vacate the district court's order of November 24, and remand the case with instructions to reinstate in full the protective order entered February 13.[7]

We now turn to the Subcommittee and the relief sought against it by IBP. At the outset, it should be noted that the Subcommittee is not a party to the underlying litigation nor a party to this appeal.[8] Nevertheless, IBP requests that we order the Subcommittee to return the documents in question to the district court and to refrain from revealing the contents of those documents.

■ IBP's argument in this regard is premised on the allegation that the Subcommittee acquired the documents in an unlawful manner. IBP argues that Rule 62(a) of the Federal Rules of Civil Procedure operated automatically to stay the order partially lifting the protective order for a period of ten days and that the Subcommittee's "seizure" of the documents three days after the November 24 order violated the protective order.

Rule 62(a) provides, in pertinent part:

Except as stated herein, no execution shall issue *upon a judgment* nor shall proceedings be taken for its enforcement until the expiration of 10 days after its entry. (Emphasis added.)

The term "judgment" is defined in Rule 54(a), which reads in pertinent part:

Judgment as used in these rules includes a decree and any order from which an appeal lies.

As we have noted, no appeal lies from the district court's order of November 24 and, accordingly, the automatic ten-day stay provision of Rule 62(a) does not apply in this case. The Subcommittee's action in taking possession of the documents thus was not in violation of the protective order.

■ Because the Subcommittee has neither been made a party to this litigation nor acted in such a manner as to violate an existing court order, we find no basis on the record now before us to compel the Subcommittee to return the papers it acquired as a result of its subpoena.

### IV.

We are aware that this opinion is probably not the final word in this controversy. As we have noted, however, the scope of our inquiry at this stage is severely limited. Any further action in this matter should be pursued in a district court of competent jurisdiction[9] or before the Subcommittee itself.

We are also cognizant of the fact that this dispute has, at least in part, passed into

---

7. Out of what is, perhaps, an overabundance of caution, we emphasize that this opinion should not be construed as meaning that review by way of mandamus is available whenever a district court compels disclosure of material claimed to be protected by privilege or other interest in confidentiality. The rationale for invoking mandamus in such situations is twofold: (1) disclosure of the allegedly privileged or confidential information renders impossible any meaningful appellate review of the claim of privilege or confidentiality; and (2) the disclosure involves questions of substantial importance to the administration of justice. *Cf. Harper & Row Publishers, Inc. v. Decker, supra,* 423 F.2d at 492. Where the case involves the attorney-client privilege, the importance of the privilege itself may serve to satisfy the second requirement. *Id.* In other cases where the claim of confidentiality is not so intrinsically a part of the administration of justice, some fur-

ther showing is required. In the instant case, this showing has been made by the unique facts of this case (essentially making the case one of first impression), the possibility that similar disclosure will be sought prior to final judgment, and the fact that the allegedly confidential documents are themselves the subject matter of the underlying lawsuit.

8. Special Counsel to the Subcommittee, John M. Fitzgibbons, appeared specially to brief and argue the case before this court.

9. At least one court has held that jurisdiction and venue in actions against congressional committees and their members are normally proper in the United States District Court for the District of Columbia. *See Liberation News Service v. Eastland,* 426 F.2d 1379 (2d Cir. 1970).

the political arena. Indeed, from the very beginning, it was apparent that non-jurisprudential considerations have played an important part in the parties' litigation strategy. We dare to suggest that those concerned would have been well-advised to have worked out an arrangement among themselves which would take into account the competing interests, rather than attempting to foist upon this court the responsibility for resolving questions which are either beyond the scope of appellate judicial authority or outside the meager record of this case.

### V.

The petition for a writ of mandamus is granted, the district court order of November 24, 1978 is vacated, and the case is remanded to the district court with instructions to reinstate in full the protective order entered on February 13, 1978.

### ON PETITION FOR REHEARING

This case comes before us on a petition for rehearing filed by The Honorable Edward J. McManus, Chief Judge of the United States District Court for the Northern District of Iowa. We adhere in general to the views expressed in our opinion of February 7, 1979, *Iowa Beef Processors, Inc. v. Bagley,* 601 F.2d 949 (8th Cir.), but find that important additional considerations raised by Judge McManus impel us to modify that opinion to the following extent.

 It is axiomatic that a writ of mandamus, as an extraordinary remedy, ordinarily should not issue where it probably will have no appreciable effect on the rights of the parties before the court. *See, e.g., Jackson v. Choate,* 404 F.2d 910, 912 (5th Cir. 1968); *Phillips v. McCauley,* 92 F.2d 790, 791 (9th Cir. 1937). In the instant case, issuing the writ compelling the reinstatement of the protective order does not alter the status quo in any way. As we noted in our earlier opinion, there is no basis for requiring the Subcommittee to return the documents acquired from Bagley. Moreover, the order partially lifting the protective order pertained only to Bagley's compliance with the Subcommittee subpoena. Any further disclosure would be in violation of the protective order, which, as we understand it, otherwise remains in full force and effect. We are confident that any future attempt by Bagley to seek permission to disclose any further information regarding these documents will be dealt with by the district court in accordance with the considerations discussed in our earlier opinion.

Given these circumstances, we agree that the formal issuance of a writ of mandamus was improvident, *cf. Ex parte Republic of Peru,* 318 U.S. 578, 590, 63 S.Ct. 793, 87 L.Ed. 1014 (1943), and we modify our earlier opinion to deny formal issuance of the writ.