## In re BURLINGTON NORTHERN, INC., Petitioner.

### No. 82–1036.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 10, 1982.

Decided June 4, 1982.

Martin M. Lucente, Lawrence I. Kipperman, James S. Whitehead, J. Andrew Schlickman, David F. Johnson, Sidley & Austin, Chicago, Ill., Barry McGrath, St. Paul, Minn., for petitioner.

Charles Barnhill, Jr., Bridget Arimond, Davis, Miner, Barnhill & Galland, Chicago, Ill., Paul C. Sprenger, Eric L. Olson, Robert L. Shutes, Sprenger, Olson & Shutes, P. A., Minneapolis, Minn., Michael J. Connolly, Gen. Counsel, Philip B. Sklover, Acting Associate Gen. Counsel, Vella M. Fink, Asst. Gen. Counsel, Justine S. Lisser, Atty., EEOC, Washington, D. C., for plaintiffs.

Before STEPHENSON,* Senior Circuit Judge, and McMILLIAN and JOHN R. GIBSON,** Circuit Judges.

McMILLIAN, Circuit Judge.

Burlington Northern Inc. petitions this court pursuant to 28 U.S.C. § 1651[1] for a writ of mandamus directing the Honorable Miles W. Lord, United States District Judge for the District of Minnesota, to vacate his

---

* The Honorable Roy L. Stephenson assumed senior judge status after this case was submitted.

** The Honorable John R. Gibson was United States District Judge for the Western District of Missouri at the time this case was submitted.

1. 28 U.S.C. § 1651 provides:

(a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

(b) An alternative writ or rule nisi may be issued by a justice or judge of a court which has jurisdiction.

order entered December 17, 1981, compelling Francis J. Coyne to answer certain deposition questions. For the reasons discussed below, we deny the petition for writ of mandamus.

Burlington Northern and several unions are the defendants in several employment discrimination cases which were transferred by the Judicial Panel on Multidistrict Litigation in April 1979 to the Northern District of Illinois (the transferee court) and assigned to the Honorable John Powers Crowley for consolidated and coordinated pretrial proceedings. (After Judge Crowley resigned from the bench in June 1981, the Judicial Panel on Multidistrict Litigation assigned the Honorable George N. Leighton to the case in September 1981.) According to Burlington Northern, the parties have been engaged in extensive discovery across the northern and western parts of the United States, from Chicago to Seattle, pursuant to various pretrial orders issued by the transferee court. *In re Burlington Northern Inc. Employment Practices Litigation,* MDL No. 374, Civil No. 78–C–269 (N.D.Ill.).

On November 3, 1980, one of the attorneys for the consolidated plaintiffs took the deposition of Francis J. Coyne in Minneapolis, Minnesota. Coyne at the time of the deposition was Director of Manpower Planning in Burlington Northern's Personnel Department; Coyne has since been made Assistant Vice-President of Burlington Northern's Human Resources Department. Coyne is a resident of Woodbury, Minnesota, and works at Burlington Northern's headquarters in St. Paul, Minnesota. Coyne was not subpoenaed but appeared pursuant to notice by agreement of counsel. As Director of Manpower Planning, Coyne developed a manpower planning system, did organizational planning, supervised equal employment opportunity activities, and prepared Burlington Northern's affirmative action plans. Counsel for the plaintiffs asked Coyne several questions about the development of the employment goals and timetables contained in Burlington Northern's affirmative action plans. Upon the instructions of Burlington Northern's counsel, Coyne refused to answer twelve questions [2] on the ground that the information sought was privileged because it would have disclosed Burlington Northern's self-critical subjective analysis of its employment practices. The rest of Coyne's deposition was completed that day.

Burlington Northern represents that it asserted this self-critical subjective analysis privilege before the taking of the Coyne deposition when it refused to disclose certain documents to the consolidated plaintiffs.

On November 18, 1980, the consolidated plaintiffs filed a motion to compel the pro-

---

**2.** The questions concerned Burlington Northern's minority hiring goals and timetables and labor markets or pools:

Q. How did you arrive at those goals [established in the first affirmative action plan of Burlington Northern]?

Q. How did you arrive at the timetables [established in the first affirmative action plan of Burlington Northern]?

Q. Were the goals set under the plan [Mandatory Achievement Goals Program], as the title suggests, mandatory?

Q. Has it ever been brought to your attention that the goals and timetables of a specific department have not been met?

Q. Do you have any input in identifying labor pools [from which Burlington Northern draws applicants for employment]?

Q. Can you tell me what you consider to be the relevant labor market or pool for scheduled employees employed at Burlington Northern's corporate headquarters?

Q. Would you at any time advise them [the department heads at Burlington Northern] that they were not meeting their goals and timetables?

Q. Has there been any instance where the goals [for the "This Way Up" program] have not been met?

Q. How do you go about establishing, or how does Mr. Mackner establish, the goals and timetables generally?

Q. Are you talking about the population or of the employees within Burlington Northern [when you establish goals for the "This Way Up" program]?

Q. What documents or what materials do you use in setting the goals [for the college recruiting program]?

Q. Can you tell me how these goals are set [for the college recruiting program], or as to whether they're by departments or professional groups or exactly how they are set?

duction of documents in the transferee court. This motion to compel production sought a determination of the existence and scope of the self-critical subjective analysis privilege asserted by Burlington Northern in resisting production of the documents. The motion is pending before Judge Leighton.

In November 1981 the consolidated plaintiffs filed a motion to compel Coyne to answer certain deposition questions in the District Court for the District of Minnesota (the deposition court). The consolidated plaintiffs filed the motion in Minnesota because, in their view, Coyne was not a party to the employment discrimination litigation and therefore the motion to compel testimony had to be made "to the court in the district where the deposition is being taken." Fed.R.Civ.P. 37(a)(1).[3] Following the submission of written memoranda and a hearing, Judge Lord ruled from the bench on December 17, 1981, that the testimony sought was not protected by the self-critical subjective analysis privilege and granted the motion to compel. Judge Lord further directed that the deposition be scheduled at a time when he could preside and rule on any specific objections. This is the ruling challenged in Burlington Northern's petition for writ of mandamus.

On December 18, 1981, the following day, Burlington Northern filed a motion in the transferee court for an expedited ruling on the consolidated plaintiffs' pending motion to compel the production of documents which Burlington Northern asserted were protected by the self-critical subjective analysis privilege. At a status hearing on January 13, 1982, in the transferee court, Judge Leighton inquired about the status of the proceedings in the deposition court and the Eighth Circuit. Counsel for Burlington Northern informed Judge Leighton that

Judge Lord had granted the consolidated plaintiffs' motion to compel testimony, thus ruling against Burlington Northern's assertion of privilege. Counsel for Burlington Northern further stated that a petition for writ of mandamus had been filed in the Eighth Circuit on January 11, 1982. Judge Leighton then indicated that he would await disposition of the matter by the Eighth Circuit. On January 15, 1982, this court issued an order directing the consolidated plaintiffs to file any response to the petition for writ of mandamus by February 1, 1982; oral argument was scheduled on an expedited basis. During oral argument counsel for the consolidated plaintiffs stated that the transferee court had issued a general protective order covering all documents produced in the course of the employment practices litigation discovery and that completion of Coyne's deposition had been delayed pending appeal.

Burlington Northern argues that appellate review of Judge Lord's order is appropriate by way of mandamus under the rationale of *Iowa Beef Processors, Inc. v. Bagley*, 601 F.2d 949, 953–55 (8th Cir.), *cert. denied*, 441 U.S. 907, 99 S.Ct. 1997, 60 L.Ed.2d 376 (1979). In *Bagley* we treated the notice of appeal as a petition for writ of mandamus, *id.* at 953 & n.3, and reviewed the district court order dissolving a protective order limiting the disclosure and use of certain documents which Iowa Beef Processors asserted contained confidential business information. We emphasized, however, that

[our] opinion should not be construed as meaning that review by way of mandamus is available whenever a district court compels disclosure of material claimed to be protected by privilege or other interest in confidentiality. The rationale for invoking mandamus in such situations is two-fold: (1) disclosure of the allegedly

**3.** Fed.R.Civ.P. 37(a)(1) provides:

(a) *Motion for Order Compelling Discovery.* A party, upon reasonable notice to other parties and all persons affected thereby, may apply for an order compelling discovery as follows:

(1) *Appropriate Court.* An application for an order to a party may be made to the court

in which the action is pending, or, on matters relating to a deposition, to the court in the district where the deposition is being taken. An application for an order to a deponent who is not a party shall be made to the court in the district where the deposition is being taken.

privileged or confidential information renders impossible any meaningful appellate review of the claim of privilege or confidentiality; and (2) the disclosure involves questions of substantial importance to the administration of justice. Where the case involves the attorney-client privilege, the importance of the privilege itself may serve to satisfy the second requirement. In other cases where the claim of confidentiality is not so intrinsically a part of the administration of justice, some further showing is required.

*Id.* at 955 n.7 (citation omitted).

Here, Burlington Northern argues that the disclosure of information allegedly subject to the self-critical subjective analysis privilege will render impossible any meaningful appellate review of the claim of privilege because the consequences of disclosure are irreversible. Burlington Northern argues that this information, once disclosed, cannot be segregated from other information. Burlington Northern argues that disclosure will have an immediate and irreparable "chilling effect" on Burlington Northern's affirmative action program and on the individual Burlington Northern officials involved in the "candid, frank appraisal" of Burlington Northern's affirmative action program and its performance thereunder. Petition for Writ of Mandamus at 8. Burlington Northern further argues that the self-critical subjective analysis privilege involves questions of substantial importance to the administration of justice. Burlington Northern argues that this privilege has "far-reaching policy implications with respect to the effective implementation of the policy of affirmative action and affirmative action programs," *id.* at 9, and to the management of consolidated discovery proceedings in multidistrict litigation, particularly the handling of nonparty depositions taken

in a district other than that of the transferee court.

On the merits Burlington Northern argues that the self-critical subjective analysis privilege has been recognized in numerous district court decisions and that recognition of the privilege is "based upon the premise that frank self-criticism and evaluation by an employer of its employment practices and policies, which is encouraged by Title VII and Executive Order 11246, would be greatly discouraged if information embodying this self-criticism were to be accessible freely through discovery in litigation by private plaintiffs." *Id.* at 10. *See Banks v. Lockheed-Georgia Co.*, 53 F.R.D. 283, 285 (N.D.Ga.1971); *accord, Rosario v. New York Times Co.*, 84 F.R.D. 626 (S.D.N.Y.1979); *Stevenson v. General Electric Co.*, 18 Empl.Prac.Dec. (CCH) ¶ 8777 (S.D.Ohio 1978). *But cf. FTC v. TRW, Inc.*, 202 U.S. App.D.C. 207, 628 F.2d 207, 210 (1980) (no privilege where information is sought by government agency);[4] *Ylla v. Delta Air Lines, Inc.*, 18 Empl.Prac.Dec. (CCH) ¶ 8937 (N.D.Cal.1977) (affirmative action proposals); *Lloyd v. Cessna Aircraft Co.*, 74 F.R.D. 518, 522 (E.D.Tenn.1977) (privilege described as not generally recognized).

Alternatively, Burlington Northern argues that Judge Lord abused his discretion in ruling on the motion to compel. As a preliminary matter Burlington Northern argues that Coyne is a managing agent of Burlington Northern and thus a *party* deponent. *See* Fed.R.Civ.P. 30(b)(6), 32(a)(2), 37(d). Burlington Northern admits that the consolidated plaintiffs could have filed the motion to compel a *party* deponent under Fed.R.Civ.P. 37(a)(1) in either the transferee court, the forum where the consolidated pretrial proceedings are pending, or in Minnesota, the forum where the deposition was being taken. Burlington Northern ar-

---

**4.** A number of other courts have relied upon a "self-evaluation" privilege in diverse factual settings. More recently, however, courts have appeared reluctant to enforce even a qualified "self-evaluation" privilege. They typically concede its possible application in some situations, but then proceed to find a reason why the documents in question do not fall within its scope. As the court stated in *Lloyd v. Cessna Aircraft Co.*, 74 F.R.D. 518, 522 (E.D.Tenn.1977), the privilege "at the most remains largely undefined and has not generally been recognized."

*FTC v. TRW, Inc.*, 202 U.S.App.D.C. 207, 628 F.2d 207, 210 (1980) (other citations omitted).

gues, however, that Judge Lord should have remitted the consolidated plaintiffs to the transferee court as the "more appropriate forum," Fed.R.Civ.P. 37(a)(1) advisory committee note (1970 amend.), in the context of multidistrict litigation. Even assuming that Coyne is a *nonparty* deponent, Burlington Northern argues that, in light of the policy objectives of multidistrict litigation,[5] Judge Lord should have either declined to rule on the motion to compel until the transferee court ruled on the consolidated plaintiffs' pending motion for the production of documents, or transferred the motion to compel to the transferee court,[6] or directed the consolidated plaintiffs as the moving parties to seek disposition of the motion to compel by the transferee court sitting as a specially designated district judge of the District of Minnesota for the purpose of supervising the deposition pursuant to 28 U.S.C. § 1407(b).[7]

**5.** The purpose of Section 1407 as shown independently by its clear language, corroborated by the legislative history, including the reports of the Congressional Committees and of the Judicial Conference, and by testimony before Congress of its authors, makes it clear that its remedial aim is to eliminate the potential for conflicting contemporaneous pretrial rulings by coordinate district and appellate courts in multidistrict related civil actions.
*In re Plumbing Fixture Cases*, 298 F.Supp. 484, 490–92 (J.P.M.D.L.1968) (footnote omitted; extensive citation to legislative history in the margin).

**6.** *See In re Uranium Antitrust Litig.*, 503 F.Supp. 33, 34–35 (N.D.Ill.1980) (multidistrict litigation) (motions relating to nonparty discovery are transferable); *Socialist Workers Party v. Attorney Gen.*, 73 F.R.D. 699, 700–01 (D.Md.1977); *Bank of Texas v. Computer Statistics, Inc.*, 60 F.R.D. 43, 45 (S.D.Tex.1973). *But cf. In re Multi-Piece Rim Prods. Liab. Litig. (Appeal of Firestone Tire & Rubber Co.)*, 209 U.S.App.D.C. 416, 653 F.2d 671 (1981) (nontransferee court rules on nonparty discovery motions); *In re Subpoena to Ford Aerospace & Communications Corp.*, 27 Fed.R.Serv.2d (Callaghan) 402 (E.D.Pa.1979) (deposition court rules on nonparty deponent's assertion of privilege but declares its ruling is "without prejudice" in light of greater expertise of court where the underlying litigation is pending); *In re Wheat Farmers Antitrust Class Action*, 440 F.Supp. 1022, 1024 (D.D.C.1977) (multidistrict litigation pending in Western District of Oklahoma; District Court for the District of Columbia rules on nonparty discovery motions).

**7.** 28 U.S.C. § 1407(b) (emphasis added) provides in part:
Such coordinated or consolidated pretrial proceedings shall be conducted by a judge or judges to whom such actions are assigned by the judicial panel on multidistrict litigation.... The judge or judges to whom such actions are assigned, the members of the judicial panel on multidistrict litigation, and other circuit and district judges designated when needed by the panel *may exercise the powers of a district judge in any district for* the purpose of conducting pretrial depositions in such coordinated or consolidated pretrial proceedings.
*See In re Uranium Antitrust Litig.*, 503 F.Supp. at 35 (multidistrict litigation) (upon motion for order exercising control over nonparty discovery in other districts, transferee court denies motion, holding that "if the district court in which the nonparty dispute arises is unwilling (or perceives itself as unable) to transfer the dispute [to the transferee court] we cannot compel it to do so"; however, transferee court was of the opinion that nonparty discovery motions are transferable; transferee court indicated that pursuant to 28 U.S.C. § 1407(b) it would go to other districts to hear and decide motions to compel discovery from nonparties); *In re IBM Peripheral EDP Devices Antitrust Litig.*, 411 F.Supp. 791, 792 (J.P.M.D.L.1976) (multidistrict litigation) (28 U.S.C. § 1407(b) plainly and clearly empowers transferee judges to preside at depositions in any federal district without specific authorization of the Judicial Panel on Multidistrict Litigation). Judge John V. Singleton, Jr., Chief Judge of the United States District Court for the Southern District of Texas, as transferee judge supervising pretrial proceedings in the multidistrict *Corrugated Container Antitrust* cases, has several times exercised authority as a judge of the district court in which depositions were being taken pursuant to 28 U.S.C. § 1407(b). *See In re Corrugated Container Antitrust Litig. (Appeal of Culy)*, 662 F.2d 875 (D.C.Cir.1981); *In re Corrugated Container Antitrust Litig. (Appeal of Conboy)*, 655 F.2d 748 (7th Cir.), *rev'd on other grounds*, 661 F.2d 1145 (1981) (banc); *In re Corrugated Container Antitrust Litig. (Appeal of Fleischacker)*, 644 F.2d 70 (2d Cir. 1981); *In re Corrugated Container Antitrust Litig. (Appeal of Franey)*, 620 F.2d 1086 (5th Cir. 1980) (appellate jurisdiction to review contempt orders issued by multidistrict transferee judge acting as judge of district court where deposition of nonparty deponent was being taken pursuant to 28 U.S.C. § 1407(b) in court of appeals within which circuit the deposition district is located), *cert. denied*, 449 U.S. 1102, 101 S.Ct. 897, 66 L.Ed.2d 827 (1981).

Although Burlington Northern's arguments with respect to the handling of non-party depositions in multidistrict litigation are not without some merit, we conclude that the present case does not involve the requisite "extraordinary situation" and deny the petition for writ of mandamus. *See Allied Chemical Corp. v. Daiflon, Inc.,* 449 U.S. 33, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980) (per curiam) (new trial order); *Kerr v. United States District Court,* 426 U.S. 394, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976) (discovery); *In re Alleghany Corp.,* 634 F.2d 1148 (8th Cir. 1980) (class certification); *Iowa Beef Processors, Inc. v. Bagley,* 601 F.2d at 953–54 (modification of protective order). As explained by the Supreme Court in *Allied Chemical Corp. v. Daiflon, Inc.,*

the writ of mandamus "has traditionally been used in the federal courts only 'to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.'" Only exceptional circumstances, amounting to a judicial usurpation of power, will justify the invocation of this extraordinary remedy.

The reasons for this court's chary authorization of mandamus as an extraordinary remedy have often been explained. Its use has the unfortunate consequence of making a district court judge a litigant, and it indisputably contributes to piecemeal appellate litigation. It has been Congress' determination since the Judiciary Act of 1789 that as a general rule appellate review should be postponed until after final judgment has been rendered by the trial court. A judicial readiness to issue the writ of mandamus in anything less than an extraordinary situation would "run the real risk of defeating the very policies sought to be furthered by that judgment of Congress." In order to insure that the writ will issue only in extraordinary circumstances, this

Court has required that a party seeking issuance have no other adequate means to attain the relief he desires and that he satisfy the "burden of showing that [his] right to issuance of the writ is 'clear and indisputable.'"

449 U.S. at 35, 101 S.Ct. at 190 (citations omitted). "And 'it is important to remember that issuance of the writ is in large part a matter of discretion with the court to which the petition is addressed.'" *In re Alleghany Corp.,* 634 F.2d at 1150, *citing Kerr v. United States District Court,* 426 U.S. at 403, 96 S.Ct. at 2124.

"[A] number of courts, including this one, have found mandamus to be an appropriate vehicle to review orders compelling the production of documents or testimony claimed to be privileged or covered by other more general interests in secrecy." *Iowa Beef Processors, Inc. v. Bagley,* 601 F.2d at 953–54. However, we think the present case lacks the "unique circumstances ... which [, in *Bagley,* gave] rise to serious policy considerations which we deem[ed] sufficiently compelling to require immediate appellate attention." *Id.* at 954 (documents sought were subject of protective orders issued in related civil antitrust multidistrict litigation, congressional subpoenas, and were themselves the subject matter of the underlying litigation). Here, the information sought is not alleged to be protected by the attorney-client privilege and is arguably relevant to the central issue in the employment practices litigation (whether Burlington Northern intentionally discriminated against minorities), but the information itself does not constitute the subject matter of the underlying litigation and is not subject to necessarily inconsistent and irreconcilable demands (protective orders and congressional subpoenas). Further, we think that there are adequate alternative means to obtain appellate review of this ancillary discovery order: [8] certification as an inter-

---

8. The motion to compel testimony was a discovery motion sought to aid discovery in litigation currently pending in another court. *See Republic Gear Co. v. Borg-Warner Corp.,* 381 F.2d 551, 554–55 (2d Cir. 1967) (granting appellate review of order denying discovery sought

in aid of discovery in district other than that in which main case was pending); *Westinghouse Elec. Corp. v. City of Burlington,* 122 U.S.App. D.C. 65, 351 F.2d 762, 765 (1965); *Horizons Titanium Corp. v. Norton Co.,* 290 F.2d 421 (1st Cir. 1961). *See generally* 15 C. Wright, A.

locutory appeal pursuant to 28 U.S.C. § 1292(b) or appeal of contempt citations.[9]

We have examined the possibility of appellate jurisdiction under 28 U.S.C. §§ 1291 and 1292. There is no certification order under 28 U.S.C. § 1292(b) in the record. The order directing Coyne to answer the deposition questions does not grant or deny injunctive relief under 28 U.S.C. § 1292(a). Nor is the order "a 'final decision' as that term is used in 28 U.S.C. § 1291, because the order is not 'one which leaves nothing for the court to do but execute the judgment.'" *Iowa Beef Processors, Inc. v. Bagley*, 601 F.2d at 952, *citing Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945). Nor does this order granting disclosure fall within the collateral order exception, *e.g., Miller v. Reighter*, 581 F.2d 1181 (8th Cir. 1978), or, apparently, the exception for third-party custodians, *e.g., In re Berkley & Co.*, 629 F.2d 548, 551 (8th Cir. 1980). At this point Coyne has not refused to answer and therefore has not been found in contempt, *see, e.g., In re Corrugated Container Antitrust Litigation (Appeal of Culy)*, 662 F.2d 875 (D.C.Cir.1981) (appeal of contempt citation against nonparty deponent who claimed privilege), nor has Burlington Northern asserted that Coyne cannot be expected to risk contempt to secure appellate review of the claim of privilege, *see, e.g., In re Berkley & Co.*, 629 F.2d at 551, *citing United States v. Ryan*, 402 U.S. 530, 532, 91 S.Ct. 1580, 1581, 29 L.Ed.2d 85 (1971), *and Perlman v. United States*, 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918). *See generally* 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3914 (1976).

Accordingly, the petition for writ of mandamus is denied.

9. Miller & E. Cooper, Federal Practice and Procedure § 3914 (1976).

9. *E.g., In re Corrugated Container Litig. (Appeal of Culy)*, 647 F.2d 460, 460–61 (5th Cir. 1981) (per curiam) (appeal of contempt order).