UNITED STATES of America, Appellee,

v.

**Mark Richard POWERS, Appellant.**

**No. 79–1791.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 7, 1979.

Decided April 30, 1980.

---

11. In so assuming, we are not expressing any opinion on the issue.

318

John P. Roehrick, Des Moines, Iowa, for appellant.

Don C. Nickerson, Asst. U. S. Atty., Des Moines, Iowa, argued, Roxanne Barton Con-

* The Honorable Floyd R. Gibson was chief judge of the Eighth Circuit at the time this case was submitted, but took senior status on December 31, 1979, before the opinion was filed.

1. The Honorable William C. Stuart, Chief Judge, United States District Court, Southern District of Iowa.

lin, U. S. Atty., Des Moines, Iowa, on brief, for appellee.

Before GIBSON, Chief Judge,* LAY and McMILLIAN, Circuit Judges.

FLOYD R. GIBSON, Senior Judge.*

Mark Powers appeals the pretrial order of the District Court[1], 477 F.Supp. 497, denying Powers' motion to exclude the public during his criminal trial. We affirm.

On January 25, 1979, a federal grand jury returned a two-count indictment against Powers charging violations of 18 U.S.C. §§ 371, 474 (1976) for conspiracy to counterfeit and possession of counterfeit plates. Powers entered a plea of not guilty on January 29, 1979. On April 3, 1979, he filed a motion seeking further discovery concerning his past involvement as an undercover agent or informant for federal and state law enforcement officials for the purpose of establishing a defense. On June 8, 1979, the District Court ordered further discovery.

On July 25, 1979, Powers filed a motion to exclude the public during his trial, alleging that the right to a public trial is the personal right of the defendant and may be waived by him. The Government resisted the motion. The District Court held hearings on the motion on August 29, 1979, and September 4, 1979, at which time *in camera* testimony was given by Powers concerning his informant status. On September 7, 1979, the court entered an order denying Powers' motion, but did find that Powers had served as an informant on a number of occasions for both the Federal Bureau of Investigation and the Iowa Department of Criminal Investigation. Powers appeals this interlocutory order under 28 U.S.C. § 1291 (1976).[2]

2. Section 1291 grants the courts of appeals jurisdiction to review "all final decisions of the district courts * * *." Adherence to the rule of finality should be "particularly stringent in criminal prosecutions because 'the delays and disruptions attendant upon intermediate appeal,' which the rule is designed to avoid, 'are especially inimical to the effective and fair administration of the criminal law.' " *Abney v.*

On appeal, Powers contends the District Court erred in requiring him to bear the burden of proof regarding the necessity of closure, and also in not granting his motion for closure.

In the District Court, Powers argued that his entire criminal trial should be closed to the public so that he could adequately present his defense to the counterfeiting charges; otherwise he would be denied his right to a fair trial under the sixth and fifth amendments. The basis of Powers's motion was that if he had been engaged in a conspiracy or in possession of counterfeit

plates, it was as an informant for law enforcement officials, and therefore he lacked the requisite criminal intent. In order to establish a defense based upon lack of intent, Powers contends that he would be required to divulge his past activities as an informant in order to show that his activities in this case were no different from his actions during his previous informant activities, where in some instances he had possessed contraband unbeknownst to the law enforcement agency. Powers alleges that a public trial would deny his right to present a defense because fear for his welfare and

United States, 431 U.S. 651, 657, 97 S.Ct. 2034, 2039, 52 L.Ed.2d 651 (1977). In Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 1225–1226, 93 L.Ed. 1528 (1949), the Supreme Court limited appellate review of trial court orders to those "which finally determine claims of right separarable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated."

We have grave doubts concerning the appealability of interlocutory orders regarding closure of criminal trials to the public. See Gannett Co. v. DePasquale, 443 U.S. 368, 398, 99 S.Ct. 2898, 2915, 61 L.Ed.2d 608, 633 (1979) (Powell, J., concurring and stating "it would be entirely impractical to require criminal proceedings to cease while appellate courts were afforded an opportunity to review a trial court's decision to close proceedings."). When the accused in a criminal case seeks immediate appellate review of an interlocutory order regarding trial closure, the order of the trial court will ordinarily not be separable from the issues to be resolved in the criminal trial itself. The order may therefore affect the decision to be made on the merits in the trial court. Abney v. United States, supra, 431 U.S. at 660, 97 S.Ct. at 2040; Cohen, supra, 337 U.S. at 546, 69 S.Ct. at 1225; see United States v. Barket, 530 F.2d 181, 185 (8th Cir. 1975), cert. denied, 429 U.S. 917, 97 S.Ct. 308, 50 L.Ed.2d 282 (1976); cf. United States v. Fiumara, 605 F.2d 116, 117–19 (3d Cir. 1979) (public closure at post-trial sentencing hearing not appealable under Cohen since defendant has no constitutional right to compel a secret trial). But cf. United States v. Schiavo, 504 F.2d 1, 4–5 (3d Cir.), cert. denied, Ditter v. Philadelphia Newspapers, Inc., 419 U.S. 1096, 95 S.Ct. 690, 42 L.Ed.2d 688 (1974) (order enjoining news media, a non-party, from publishing information during trial appealable within collateral order doctrine); United States v. Cianfrani, 573 F.2d 835, 845 (3d Cir. 1978) (order closing pretrial hearing appealable by

news media, intervenors, within collateral order doctrine).

However, because of the fallout from the Gannett case and the proliferation of cases coming on line dealing with the issue of closure of open and public proceedings and since under the particular facts of this case we find that the trial court's non-closure order would not affect the accused's right to a fair trial, we have assumed jurisdiction in order to discuss the issue of closure in criminal trials. See Gillespie v. U. S. Steel Corp., 379 U.S. 148, 153, 85 S.Ct. 308, 311, 13 L.Ed.2d 199 (1964).

The dissent suggests that "interlocutory review of a closure decision should be available only in extraordinary cases by writ of mandamus." Post at 328. Mandamus is an extraordinary writ of limited dimensions and we feel its scope should not be broadened to encompass this factual context. "The peremptory writ of mandamus has traditionally been used in the federal courts only 'to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so' "; and, "only exceptional circumstances amounting to a judicial 'usurpation of power' will justify the invocation of this extraordinary remedy. De Beers Consol. Mines, Ltd. v. United States, 325 U.S. 212, 217 [, 65 S.Ct. 1130, 1132, 89 L.Ed. 1566] (1945)." Will v. United States, 389 U.S. 90, 95, 88 S.Ct. 269, 273, 19 L.Ed.2d 305 (1967). Here, obviously the District Court did not exceed its jurisdiction, nor in any way usurp power. Kerr v. United States District Court, 426 U.S. 394, 402–03, 96 S.Ct. 2119, 2124, 48 L.Ed.2d 725 (1976). Furthermore, mandamus is particularly inappropriate when a criminal prosecution is involved, since it results in piecemeal appeals and delayed justice. The Supreme "Court has never approved the use of the writ to review an interlocutory procedural order in a criminal case which did not have the effect of a dismissal." Will, supra, 389 U.S. at 98, 88 S.Ct. at 275. The writ of mandamus is an inappropriate vehicle to review trial court decisions regarding closure of criminal trials.

safety, as well as that of his family, would preclude divulging his past activities in open court.

The District Court found that an order of closure would not be proper unless Powers established the following:

1) By clear and convincing evidence that there was a clear and present danger of actual harm to the life of the defendant or a member of his family;

2) consent to the closure on the part of the prosecution, * * * or a compelling reason for not requiring the prosecution's consent;

3) by clear and convincing evidence that the closure of defendant's criminal trial would effectively prevent the harm alleged and proven to exist; and

4) by clear and convincing evidence that there are no effective alternatives to the complete closure of the criminal trial.

*United States v. Powers*, 477 F.Supp. 497, 499 (S.D.Iowa 1979).

The District Court concluded that Powers had failed to prove by clear and convincing evidence that an open court presentation of his defense would result in a clear and present danger of actual harm to the life of the defendant or a member of his family. In addition, the court suggested an alternative to closure whereby Powers and the Government would stipulate to Powers's informant status.

## I.

Powers does not now contend that he has an absolute sixth amendment right to compel closure, though his motion for closure claimed that the right to public trial "is the right of the defendant and may be waived." The Supreme Court, in *Gannett Co. v. De-Pasquale*, 443 U.S. 368, 382 & n. 11, 99 S.Ct. 2898, 2907 & n. 11, 61 L.Ed.2d 608, 623 & n. 11 (1979), clearly states that no absolute right to compel a private trial exists, citing *Singer v. United States*, 380 U.S. 24, 35, 85 S.Ct. 783, 790, 13 L.Ed.2d 630 (1965).

Forgoing any claim of absolute right to closure, Powers limits his claim to a sixth amendment right to waive his right to a public trial to those situations in which the right to a fair trial is denied. Essentially, Powers argues that his sixth amendment right to compel closure is coextensive with his fifth amendment due process right to a fair trial. The Court's plurality decision in *Gannett* apparently does not preclude a right to compel closure whenever a defendant would otherwise be denied a fair trial, if *Gannett's* pretrial ruling can be applied to the plenary criminal trial. *Gannett, supra*, 443 U.S. at 382 n. 11, 99 S.Ct. at 2907 n. 11, 61 L.Ed.2d at 623 n. 11; *id.* 443 U.S. at 440 & n. 16, 99 S.Ct. at 2936 & n. 16, at 659 & n. 16 (Blackmun, J., dissenting). *See also id.* at 443 U.S. 400, 99 S.Ct. at 2916, 61 L.Ed.2d at 634 (Powell, J., concurring). At issue in this appeal is the narrow question of whether Powers would be denied his due process right to a fair trial, and therefore whether the District Court erred in not allowing him to waive his sixth amendment right to a public trial and compel closure.[3]

## II.

The Court's majority opinion in *Gannett* did not precisely address the question of the

3. In this case we express no opinion on the issue of whether members of the press or public have any constitutional right to access to criminal trials on the basis of the first and fourteenth amendments, *see Gannett, supra*, 443 U.S. at 392, 99 S.Ct. at 2912, 61 L.Ed.2d at 629, or on the closure standards to be applied when both the Government and the defendant agree on closure. *Compare Gannett, supra*, 443 U.S. at 398 & n. 2, 400, 99 S.Ct. at 2915 & n. 2, 2916, 61 L.Ed.2d at 633 & n. 2, 634 (Powell, J., concurring), *with id.* 443 U.S. at 404–05 & n. 2, 99 S.Ct. at 2918–19 & n. 2, 61 L.Ed.2d at 636–38 & n. 2 (Rehnquist, J., concurring). Nor do we attempt to interpret the extent to which

the *Gannett* majority opinion applies to situations beyond the closure of pretrial hearings. *See id.* 443 U.S. at 392–396, 99 S.Ct. at 2913–14, 61 L.Ed.2d at 630–32 (Burger, C. J., concurring); *id.* 443 U.S. at 397 n. 1, 99 S.Ct. at 2914 n. 1, 61 L.Ed.2d at 632 n. 1 (Powell, J., concurring). The narrow issue in *Gannett* "is whether the Constitution *requires* that a pretrial proceeding such as this one be opened to the public, even though the participants in the litigation agree that it should be closed to protect the defendant's right to a fair trial." 443 U.S. at 385, 99 S.Ct. at 2908, 61 L.Ed.2d at 625 (footnote omitted). *See generally, The Supreme Court, 1978 Term*, 93 Harv.L.Rev. 62, 62–66 (1979).

extent to which a defendant can compel closure when he claims his right to a fair trial is in jeopardy. In a footnote, Justice Stewart quoted *Singer v. United States*, 380 U.S. 24, 35, 85 S.Ct. 783, 790, 13 L.Ed.2d 630 (1965),[4] for the proposition that "although a defendant can, *under some circumstances*, waive his constitutional right to a public trial, he has no absolute right to compel a private trial." *Gannett, supra*, 443 U.S. at 382 n. 11, 99 S.Ct. at 2907 n. 11, 61 L.Ed.2d at 623 n. 11 (emphasis added).

Justice Powell, however, in his concurring opinion in *Gannett*, suggested a standard to be applied by trial courts in response to requests for closure by the defendant:

> The question for the trial court, therefore, in considering a motion to close a pretrial suppression hearing is whether a fair trial for the defendant *is likely to be jeopardized by publicity*, if members of the press and public are present and free to report prejudicial evidence that will not be presented to the jury.
>
> * * * [W]here a defendant requests the trial court to exclude the public, it should consider whether there are alternative means reasonably available by which the fairness of the trial might be preserved without interfering substantially with the public's interest in prompt access to information concerning the administration of justice.

443 U.S. at 400, 99 S.Ct. at 2916, 61 L.Ed.2d at 634 (emphasis added).[5]

In contrast, as pointed out by Justice Powell, 443 U.S. at 399, 99 S.Ct. at 2915, 61 L.Ed.2d at 634, the dissenting opinion of Justice Blackmun, joined by Justices Brennan, White, and Marshall, would impose a severe burden upon defendants seeking closure. "It comports with the Sixth Amendment to require an accused who seeks closure *to establish that it is strictly and inescapably necessary* in order to protect the fair trial guarantee." 443 U.S. at 440, 99 S.Ct. at 2936, 61 L.Ed.2d at 660 (emphasis added).

Finally, Justice Rehnquist, in his concurring opinion, also objects to Justice Powell's standards when the participants in a criminal litigation agree for any reason that the trial shall be closed, 443 U.S. at 404–05 & n. 2, 99 S.Ct. at 2918–19 & n. 2, 61 L.Ed.2d at 637–38 & n. 2, a situation not presented here.[6]

The criteria for closure adopted in the District Court are substantially similar to those outlined in Justice Blackmun's dissenting opinion. Under the "strictly and inescapably necessary" standard, Justice Blackmun would require a three-prong test:

> The accused who seeks closure should establish . . . the following:
>
> First, he should provide an adequate basis to support a finding that there is a substantial probability that irreparable damage to his fair trial right will result from conducting the proceeding in public.
>
> * * * * * *

---

**4.** The Supreme Court, in *Singer v. United States*, 380 U.S. 24, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965), held that a defendant cannot waive a jury trial without the consent of the prosecutor and the judge because of the great public interest in jury trials as the preferred mode of fact-finding in criminal cases. *See Gannett, supra*, 443 U.S. at 384, 99 S.Ct. at 2908, 61 L.Ed.2d at 624. The Court, however, left open the question of "whether there might be some circumstances where a defendant's reasons for wanting to be tried by a judge alone are *so compelling* that the Government's insistence on trial by jury would result in the denial to a defendant of an impartial trial." *Singer, supra*, 380 U.S. at 37, 85 S.Ct. at 791 (emphasis added). In order to waive a jury trial, the defendant must therefore demonstrate, at a minimum,

"compelling" reasons for being tried by a judge.

**5.** While Justice Powell is referring here to the specific situation of publicity resulting in prejudicial effects upon a jury, his standard of "is likely to be jeopardized by publicity" apparently also applies to those situations necessary "to preserve the confidentiality of sensitive information and the identity of informants." 443 U.S. at 398, 99 S.Ct. at 2915, 61 L.Ed.2d at 633.

**6.** *See* note 3, *supra*. Justice Powell's standard, however, apparently extends to the case involved herein, at least after the trial judge has granted closure and the prosecutor opposes closure. *See* 443 U.S. at 401, 99 S.Ct. at 2916, 61 L.Ed.2d at 635.

Second, the accused should show a substantial probability that alternatives to closure will not protect adequately his right to a fair trial.

\* \* \* \* \* \*

Third, the accused should demonstrate that there is a substantial probability that closure will be effective in protecting against the perceived harm.

443 U.S. at 441–42, 99 S.Ct. at 2937, 61 L.Ed.2d at 660–61.

The main difference between Justice Blackmun's test and that required by the District Court is that the latter requires "clear and convincing" evidence in order to compel closure, while Justice Blackmun would require only a showing of "substantial probability." In addition, the District Court would require "consent to the closure on the part of the prosecution" or "a compelling reason for not requiring the prosecution's consent." Justice Blackmun would apply his test regardless of the consent or nonconsent of the prosecutor. 443 U.S. at 445, 99 S.Ct. at 2939, 61 L.Ed.2d at 663.

 We believe that Justice Blackmun's three-prong test correctly states the standard to be applied in the limited case where the defendant seeks closure without the consent of the prosecutor. Nothing in the majority opinion in *Gannett* suggests otherwise.[7] If anything, Justice Stewart's majority opinion may imply a greater burden on the defendant to compel closure when there is no consent on the part of the prosecutor. *See* 443 U.S. at 382 & n. 11, 99 S.Ct. at 2907 & n. 11, 61 L.Ed.2d at 623 & n. 11.

 The practice in Western civilization, and the common-law rule, has been to require public trials. *Gannett*, 443 U.S. at 384, 394, 414, 99 S.Ct. at 2908, 2913, 2923, 61 L.Ed.2d at 624, 630, 643. There is a strong societal interest in public trials. "Openness in court proceedings may improve the quali-

ty of testimony, induce unknown witnesses to come forward with relevant testimony, cause all trial participants to perform their duties more conscientiously, and generally give the public an opportunity to observe the judicial system. *Estes v. Texas, supra,* 381 U.S. [532], at 583 [85 S.Ct. 1628 at 1653, 14 L.Ed.2d 543] (Warren, C. J., concurring) [1965]." *Gannett*, 443 U.S. at 383, 99 S.Ct. at 2907, 61 L.Ed.2d at 623. The benefits of an open, public trial are substantial. Only in the rare case will closure to the press be necessary in order to protect a defendant's right to a fair trial. *Id.*, 443 U.S. at 404 n. 1, 99 S.Ct. at 2918 n. 1, 61 L.Ed.2d at 636 n. 1 (Rehnquist, J., concurring); *Nebraska Press Association v. Stuart*, 427 U.S. 539, 554, 96 S.Ct. 2791, 2800, 49 L.Ed.2d 683 (1976); *e. g., Sheppard v. Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); *Estes v. Texas*, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965). Even fewer are those cases where the courts will need to go further and exclude the public for limited periods of time. *United States v. Cianfrani*, 573 F.2d 835, 854 (3d Cir. 1978); *e. g., United States v. Bell*, 464 F.2d 667, 670–72 (2d Cir.), *cert. denied*, 409 U.S. 991, 93 S.Ct. 335, 34 L.Ed.2d 258 (1972). The norm and presumption of the sixth amendment is that a trial should be a public proceeding. *Gannett*, 443 U.S. at 385, 99 S.Ct. at 2908, 61 L.Ed.2d at 625. Only in the most exceptional circumstances should closure even be considered, and in fewer instances compelled. A criminal defendant is guaranteed a public trial, but there is no constitutional guarantee of a closed trial at the defendant's request. It is certainly worth consideration that in the entire history of our country, no one prior to the *Gannett* decision has advanced the concept of secret trials as applied to a plenary criminal proceeding. As stated by Justice Blackmun in his dissent in *Gannett*, 443 U.S. at 414, 99 S.Ct. at 2923, 61 L.Ed.2d at 643:

---

**7.** The Court did suggest that a trial court "may surely take protective measures even when they are not strictly and inescapably necessary" in order to minimize the effects of pretrial publicity. 443 U.S. at 378, 99 S.Ct. at 2904, 61 L.Ed.2d at 620. Protective measures are proper, and are provided for in the second prong of this test, when the defendant seeking closure is unable to meet the "strictly and inescapably necessary" standard in order to compel complete closure.

The importance we as a Nation attach to the public trial is reflected both in its deep roots in the English common law and in its seemingly universal recognition in this country since the earliest times. When *In re Oliver* was decided in 1948, the Court was "unable to find a single instance of a criminal trial conducted in camera in any federal, state, or municipal court during the history of this country," 333 U.S. [257] at 266 [68 S.Ct. 499, 504, 92 L.Ed. 682] (footnote omitted), with the exception of cases in courts martial and the semiprivate conduct of juvenile court proceedings. *Id.*, at 266 n. 12 [68 S.Ct. at 504 n. 12]. Nor could it uncover any record "of even one such secret criminal trial in England since abolition of the Court of Star Chamber in 1641." *Ibid.*

■ In order for the defendant to compel closure in a trial wherein the prosecutor does not consent, we hold that the defendant must carry "his burden to demonstrate a strict and inescapable necessity for closure." *Id.* 443 U.S. at 443, 99 S.Ct. at 2938, 61 L.Ed.2d at 661 (Blackmun, J., dissenting); *see United States v. Cianfrani, supra,* 573 F.2d at 854. We do not decide the correct sixth amendment standard, if any,[8] or the first amendment standard[9] to be applied if the prosecutor consents to closure.

### III.

■ Powers argued in the District Court for the adoption of a "clear and convincing" evidence standard rather than one based on evidence sufficient to support a finding that there is a "substantial probability" that irreparable damage to his fair trial right will result from a public trial.

Since Powers set forth the former standard, he does not appeal its application. Even though the District Court's standard may have been greater than required, Powers was not prejudiced. Powers did not meet the "substantial probability" standard, either. The District Court found that the evidence produced by Powers "at most demonstrates a fear of harm based on the allegedly violent nature of some of the persons involved." Furthermore, Powers "failed to prove that closure would effectively prevent the alleged harm." In addition, the court found that "there is an alternative that * * * will enable the defendant to present his defense without closing the trial to the public." The court suggested that the Government and Powers agree to a stipulation concerning his informant activities.[10] Powers failed all three prongs of the closure test. The District Court's denial of Powers's motion to compel closure did not deny him his due process right to a fair trial.

Finally, Powers argues that the District Court erred in placing the burden of proof to compel closure upon him, instead of the Government. Powers contends that he should be made only to bear the burden of going forward with demonstrating a danger of harm to himself or his family. After he has met this burden of going forward, the Government should be required to demonstrate that closure is not necessary. We disagree.

■ The common-law tradition and our history from its inception certainly compel the assumption that the sixth amendment presumes open trials as the norm. *Gannett,* 443 U.S. at 385, 99 S.Ct. at 2908, 61 L.Ed.2d at 625. The defendant therefore

---

8. *See* note 3, *supra.*

9. *See* note 6 and text, *supra.*

10. *United States v. Powers,* 477 F.Supp. at 499. Extrinsic evidence of specific instances of the conduct of a witness generally may not be introduced for the purpose of attacking or supporting the witness's credibility, *see* Fed.R. Evid. 608(b); *United States v. Poulack,* 556 F.2d 83, 89 (1st Cir.), *cert. denied,* 434 U.S. 986, 98 S.Ct. 613, 54 L.Ed.2d 480 (1977); *United*

States v. Scholle, 553 F.2d 1109, 1122–23 (8th Cir.), *cert. denied,* 434 U.S. 940, 98 S.Ct. 432, 54 L.Ed.2d 300 (1977), though testimony by the accused of specific instances of conduct is admissible when his character or a trait of his character is an essential element of his defense. *See* Fed.R.Evid. 405(b); *United States v. Giese,* 597 F.2d 1170, 1190 (9th Cir.), *cert. denied,* 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 (1979). Here Powers has already given his testimony *in camera* on the informant issue.

has the burden of proof of overcoming this presumption and strong tradition for open proceedings. The defendant argues that since the Government must prove every essential element of the crime in a criminal trial, it must also bear the burden on closure. The closure of criminal proceedings *vel non*, however, is not an essential element of the crime charged. The burden, and indeed a heavy burden, rests on a defendant seeking a private or secret trial. The defendant must demonstrate the necessity of closure based upon all three prongs of the test. Not only must the defendant demonstrate a substantial probability of irreparable damage to his fair trial right, he must also show a substantial probability that alternatives to closure do not exist and that closure will be effective in protecting against the perceived harm. A mere demonstration of potential harm to the defendant is insufficient to shift the burden for opposing closure to the Government. Only after the defendant has met all three prongs of the closure test should the prosecutor be required to demonstrate that less than complete closure is necessary. *See id.* 443 U.S. at 444, 99 S.Ct. at 2938–39, 61 L.Ed.2d at 662 (Blackmun, J., dissenting); *United States v. Cianfrani, supra*, 573 F.2d at 854. Here Powers has not even met his burden of demonstrating a substantial probability that irreparable damage to his fair trial right will result from conducting the proceeding in public. Closure would be improper under these circumstances.

Affirmed.

McMILLIAN, Circuit Judge, dissenting.

I dissent. In my view, because the refusal of the court below to close the trial is not a final decision, we lack appellate jurisdiction over the case under 28 U.S.C. § 1291. However, the extraordinary nature of appellant's claim, which involves both an allegedly life and death situation for him and a dramatically unsettled area of law, makes this one of those rare instances where we should treat the appeal as a petition for writ of mandamus. For the following reasons, I would grant the petition for writ of mandamus and order the trial court to close to the public the testimony about appellant's past activities as a police informant.

I. *Appellate Jurisdiction*

Our jurisdiction to review the district court's decision depends on 28 U.S.C. § 1291, which provides for review of "final decisions." Appellate jurisdiction is not thereby limited only to review of final *judgments.* "While a final judgment always is a final decision, there are instances in which a final decision is not a final judgment." *Stack v. Boyle*, 342 U.S. 1, 12, 72 S.Ct. 1, 7, 96 L.Ed. 3 (1951) (opinion of Jackson, J.). Where a "collateral order" disposes of some right not bound up with the final judgment in the case, the order may be a reviewable "final decision" under § 1291. *See generally Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). Examples of such final decisions in criminal cases include: denial of bail, *Stack v. Boyle, supra*, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3; denial of a pretrial motion to dismiss on double jeopardy grounds, *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977); and denial of a motion to dismiss an indictment because the allegedly criminal conduct was immunized by the Speech and Debate Clause, *Helstoski v. Meanor*, 442 U.S. 500, 99 S.Ct. 2445, 61 L.Ed.2d 30 (1979). The Supreme Court has, however, emphasized that appeals prior to final judgment are strongly disfavored in criminal cases where swift and economical dispensation of justice is especially critical. "The rule of finality has particular force in criminal prosecutions because 'encouragement of delay is fatal to the vindication of the criminal law.'" *United States v. MacDonald*, 435 U.S. 850, 853–54, 98 S.Ct. 1547, 1549, 56 L.Ed.2d 18 (1978), *citing Cobbledick v. United States*, 309 U.S. 323, 325, 60 S.Ct. 540, 541, 84 L.Ed. 783 (1940). *See also Abney v. United States, supra*, 431 U.S. at 656, 97 S.Ct. at 2038; *DiBella v. United States*, 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962); *Parr v. United States*, 351 U.S. 513, 76 S.Ct. 912, 100 L.Ed. 1377 (1956); *Cogen v. United States*, 278 U.S. 221, 49 S.Ct. 118, 73 L.Ed. 275 (1929).

The requirements for an appealable collateral order have been set forth by this court:

(1) [T]he order must be a final determination of a claim of right "separable from, and collateral to," rights asserted in the action;

(2) it must be "too important to be denied review," in the sense that it "presents a serious and unsettled question"; and

(3) its review cannot, in the nature of the question that it presents, await final judgment because "when that time comes, it will be too late effectively to review the * * * order and rights conferred * * * will have been lost, probably irreparably."

*United States v. Barket,* 530 F.2d 181, 185 (8th Cir. 1975), *cert. denied,* 429 U.S. 917, 97 S.Ct. 308, 50 L.Ed.2d 282 (1976), *citing* 9 J. Moore, Moore's Federal Practice § 110.10 (2d ed. 1970).

First, the right claimed by appellant is inextricably bound up with the trial of his case. The essential question—whether appellant will receive a fair trial—involves disposition on the merits. Here, appellant claims essentially that, because of the dangers to himself and his family, he cannot effectively present in open court a defense based on his claim that he was an informant and therefore did not act with the necessary criminal intent. In general, such due process issues, like speedy trial issues will not be finally resolved until after the trial. "Before trial, of course, an estimate of the degree to which delay has impaired an adequate defense tends to be speculative." *United States v. MacDonald, supra,* 435 U.S. at 858, 98 S.Ct. at 1551.

Similarly, appellant's claim in the present case is that he will be denied a fair trial. The language and holding of *MacDonald* therefore forecloses appellate jurisdiction. Appealable collateral orders in criminal cases have involved only the denial of rights that do not depend on how the trial itself is conducted. *See Stack v. Boyle, supra,* 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (denial of bail held appealable). By contrast, this appeal hinges on the conduct of the trial. It is distinguishable from appeals of failure to dismiss an indictment that runs afoul of the speech and debate clause or double jeopardy clause, wherein a defendant "is contesting *the very authority of the Government to hale him into court to face trial on the charge against him." Helstoski v. Meanor, supra,* 442 U.S. at 507, 99 S.Ct. at 2449 (emphasis in original), *citing Abney v. United States, supra,* 431 U.S. at 659, 97 S.Ct. at 2040. In the present case, appellant claims the refusal to close his trial "has frustrated his ability to establish his innocence of the crime charged. Normally, it is only after trial that that claim may fairly be assessed." *United States v. MacDonald, supra,* 435 U.S. at 860, 98 S.Ct. at 1552. Thus, the third requirement of a collateral order is not met.

The majority opinion recognizes that in general this court lacks appellate jurisdiction until entry of the final judgment (*i. e.,* a conviction and sentence) over a decision below not to close proceedings. *See* 319–320 n. 2. Nonetheless, the majority assumes jurisdiction "because of the fallout from the *Gannett* case and the proliferation of cases coming on line dealing with the issue of closure of open and public proceedings . . . ." *Id.* In short, the majority takes jurisdiction of this case because of its "extraordinary nature." However, the Supreme Court has admonished that the facts of a particular case should not be a basis for appellate jurisdiction:

The Court of Appeals' . . . rationale—that it was the "extraordinary nature" of [appellant's] claim that merited interlocutory appeal, even though not all [such] claims would be so meritorious—is also unpersuasive. "Appeal rights cannot depend on the facts of a particular case." *Carroll v. United States,* 354 U.S. 394, 405 [, 77 S.Ct. 1332, 1339, 1 L.Ed.2d 1442] (1957). The factual circumstances that underlie a [particular] claim, however "extraordinary," cannot establish its independent appealability prior to trial.

*United States v. MacDonald, supra,* 435 U.S. at 857–58 n. 6, 98 S.Ct. at 1551 n. 6. In my opinion, appellant's claim is essentially an interlocutory appeal over which we lack appellate jurisdiction.

## II. *Mandamus Jurisdiction*

However, I think the extraordinary nature of this case does mandate treatment of the appeal as a petition for writ of mandamus. *E. g., Wilkins v. Erickson,* 484 F.2d 969 (8th Cir. 1973). *See also Iowa Beef Processors, Inc. v. Bagley,* 601 F.2d 949, 953 n. 3 (8th Cir. 1979); *Hartland v. Alaska Airlines,* 544 F.2d 992, 1001 (9th Cir. 1976); *id.* at 1003–04 & n. 2 (Wallace, J., concurring) (cases cited therein).

This case reaches us in an extraordinary posture factually as well as legally. The facts indicate the grave nature of appellant's predicament. The prosecution does not dispute appellant's position that he was a secret police informer who provided key evidence in several major criminal trials which resulted in convictions; the law enforcement authorities have in the past kept his informant status secret on some occasions even at the expense of dropping several prosecutions. Some of appellant's former associates have committed violent acts against people. Legally, the issue of a defendant's right to close his trial in these circumstances is one of first impression in this court. Moreover, the district court's decision failed to reconcile the refusal to close at least part of appellant's trial with an abundance of precedent allowing closure to protect prosecution witnesses, including rape victims and police informants, by closing their testimony to the public. (These closure cases are more fully elaborated below in the discussion of the merits.)

Mandamus is the appropriate vehicle for this court to review a decision where "there are present extraordinary and exceptional circumstances which require the grant of the extraordinary remedy to prevent a grave miscarriage of justice which might otherwise result . . . ." *Hartley Pen Co. v. United States District Court,* 287 F.2d 324, 327 (9th Cir. 1961). *See also Iowa Beef Processors, Inc. v. Bagley, supra,* 601

F.2d at 953–54; *Gialde v. Time, Inc.,* 480 F.2d 1295, 1302 (8th Cir. 1973) (Heaney, J., concurring and dissenting). "It is, of course, well settled, that the writ [of mandamus] is not to be used as a substitute for appeal . . . even though hardship may result from delay and perhaps unnecessary trial . . . . The writ is appropriately issued, however, when there is . . a *clear abuse of discretion* . . . ." *Schlagenhauf v. Holder,* 379 U.S. 104, 110, 85 S.Ct. 234, 238, 13 L.Ed.2d 152 (1964) (emphasis added) (citations omitted). *See also Will v. United States,* 389 U.S. 90, 107, 88 S.Ct. 269, 280, 19 L.Ed.2d 305 (1967) (Black, J., concurring); *La Buy v. Howes Leather Co.,* 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957); 16 Wright, Miller, Cooper & Gressman, Federal Practice & Procedure, Jurisdiction §§ 3932–3936 (1977).

[A] number of courts, including this one, have found mandamus to be an appropriate vehicle to review orders compelling . . . testimony claimed to be privileged or covered by other more general interests in secrecy. *See, e. g. Diversified Industries, Inc. v. Meredith,* 572 F.2d 596 (8th Cir. 1978) (en banc) (attorney-client privilege); *Usery v. Ritter,* 547 F.2d 528 (10th Cir. 1977) (disclosure of identity of informer in FLSA case); *Breed v. United States Dist. Ct.,* 542 F.2d 1114 (9th Cir. 1976) (disclosure of personnel and inmate files of state youth authority); *Pfizer, Inc. v. Lord,* 456 F.2d 545 (8th Cir. 1972) (attorney-client privilege); *United States v. United States Dist. Ct.,* 444 F.2d 651 (6th Cir. 1971), *aff'd,* 407 U.S. 297, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972) (disclosure to conspiracy defendant of his monitored conversations); *Harper & Row Publishers, Inc. v. Decker,* 423 F.2d 487 (7th Cir. 1970), *aff'd by an equally divided court,* 400 U.S. 348, 91 S.Ct. 479, 27 L.Ed.2d 433 (1971) (attorney-client privilege); *Hartley Pen Co. v. United States Dist. Ct.,* 287 F.2d 324 (9th Cir. 1961) (disclosure of secret formula acquired under license forbidding disclosure). . .

*Iowa Beef Processors, Inc. v. Bagley, supra,* 601 F.2d at 953–54.

While the difference between the mandamus approach I suggest and the appellate jurisdiction asserted in Judge Gibson's opinion may seem purely formal at first glance, I believe there are important reasons for making the distinction. First, the majority opinion broadly holds, "Closure would be improper under these circumstances." At 325. I do not think we should pretermit due process questions which may be more apparent after trial than now. (I think due process, however, requires at this point that the proceedings be closed in part. *See* part III *infra*.)

Secondly, we should give a more clear indication as to how we will respond to this kind of matter in the future. I agree with Judge Gibson that ordinarily the question of closure is a matter of the trial court's discretion and that it would ordinarily be inappropriate to halt the trial court's proceedings to review the decision. At 319–320 n. 2, *citing Gannett Co. v. DePasquale*, 443 U.S. 368, 398, 99 S.Ct. 2898, 2915 (1979) (Powell, J., concurring). But the majority opinion then proceeds to make a special exception in this case and grant review. This treatment may suggest that we would decline to review all such orders in the future. I think that interlocutory review of a closure decision should be available only in extraordinary cases by writ of mandamus. I would apply this rule in this case instead of granting appellate review, since we all seem to agree appellate review should generally be foreclosed at this stage in the proceedings.

III. *The Merits*

I have reviewed the record, including the transcript of the *in camera* hearing held below, to ascertain the basis for appellant's closure motion. Appellant testified concerning the dangers he perceived from specific persons if his previous informing activities would be revealed. Although the prosecution thoroughly cross-examined appellant, bringing out factors that might reduce the danger, it did not offer any affirmative evidence to refute appellant's testimony or demonstrate that appellant's apprehension was feigned or unreasonable.

The decision of the court below left Powers with a choice between omitting details of his informing activities from his defense or disclosing publicly information that might well tend to endanger himself and his family.

The district court held that

an order of closure would not be proper unless the defendant established:

(1) by clear and convincing evidence that there was a clear and present danger of actual harm to the life of the defendant or a member of his family;

(2) consent to the closure on the part of the prosecution, *see Gannett v. De-Pasquale*, supra, or a compelling reason for not requiring the prosecution's consent:

(3) by clear and convincing evidence that the closure of the defendant's criminal trial would effectively prevent the harm alleged and proven to exist; and

(4) by clear and convincing evidence that there are no effective alternatives to the complete closure of the criminal trial.

The Court concludes that the defendant failed to prove by clear and convincing evidence that the open court presentation of his defense would result in a clear and present danger of actual harm to the life of the defendant or a member of his family. The evidence at most demonstrates a fear of harm based on the allegedly violent nature of some of the persons involved. Admittedly, the defendant has shown that the prosecution would never consent to the closure because the issue before the Court focuses on a possible defense to the prosecution's charges against the defendant. Powers, however, failed to prove that closure would effectively prevent the alleged harm, and provided the Court with no insight on how to prevent the jurors and witnesses from discussing the case subsequent to the trial, or on how to prevent the disclosure of information if the trial court's decision is appealed. In addition,

it was brought to the attention of the Court in the closed portion of the hearing that the defendant may generally be known to have been an informant for the Federal Bureau of Investigation and the Iowa Department of Criminal Investigation.

Finally, there is an alternative that the Court believes will enable the defendant to present his defense without closing the trial to the public. Such alternative procedure is [a generally-worded stipulation that appellant had in the past been an informant]. Therefore, the defendant's Motion to Exclude the Public During Trial shall be denied because the defendant has failed to establish the necessary circumstances set forth above.

*United States v. Powers*, 477 F.Supp. 497, 498–99 (S.D.Iowa 1979). In my view, both the standard and the result embody an unduly restrictive approach to the court's power to guarantee Powers a fair trial.

In my analysis, this case involves the most fundamental aspects of due process. "The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations." *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1973). In the landmark case of *United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974), the court held that due process rights of criminal defendants to obtain evidence needed for their defense outweighs other constitutionally based interests such as a presidential claim that certain communications were privileged. "The need to develop all relevant facts in the adversary system is both fundamental and comprehensive." *Id.* at 709, 94 S.Ct. at 3108. "The right to the production of all evidence at a criminal trial . . . has constitutional dimensions." *Id.* at 711, 94 S.Ct. at 3109. Although the *Nixon* case directly involved the ability of criminal defendants to obtain evidence for their defense, the rationale applies equally strongly to the ability of defendants to present evidence in their defense at trial. Thus, we have said, "[t]he exclusion of critical evidence under state evidentiary rules may deprive a defendant of a fair trial and amount to a denial of due process," *Johnson v. Brewer*, 521 F.2d 556, 562 n. 16 (8th Cir. 1975).

Powers claims that publication of his testimony would endanger his life. Therefore, publicity would deter him from putting on evidence of past informing activities much of which is obviously relevant to his defense that he may have committed the acts charged as crimes in the capacity of an informer and lacked criminal intent. The trial court seems to have recognized that, indeed, public proceedings would tend to inhibit appellant from revealing his full activities as an informant, and suggested that appellant rely on a general stipulation as to his status as an informant without going into specifics.

Our tradition of public trials is supported by strong social interests, as Judge Gibson points out. At 323, *citing Estes v. Texas*, 381 U.S. 532, 583, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965) (Warren, C. J., concurring). *See also In re Oliver*, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948); Radin, The Right to a Public Trial, 6 TEMP. L.Q. 381 (1932); Note, 36 ORE.L.REV. 345 (1957); 6 J. WIGMORE, EVIDENCE §§ 1834–36 (Chadbourn rev. ed. 1976). But in this case we measure that tradition and the reasons for the tradition against the constitutional guarantee of due process to the defendant. To do so requires, I believe, a look at the considerations which continue to breathe life into the requirement of public trials.

Commentators have pointed out three different kinds of interests protected by keeping trials open. Primary among these general factors supporting open trials is the aid given to the search for truth by the public presence. "This open examination of witnesses *viva voce*, in the presence of all mankind, is much more conducive to the clearing up of truth, than the private and secret examination . . . where a witness may frequently depose that in private, which he will be ashamed to testify in a public and solemn tribunal." 3 Blackstone,

Commentaries on the Laws of England 373 (1768) (footnote omitted).

The publicity of a judicial proceeding is a requirement of much broader bearing than its mere effect upon the quality of testimony; *it would be essentially desirable and demandable on additional grounds.* Nevertheless, it plays an important part as a security for testimonial trustworthiness and would exist as an independent requirement for that reason only, even where other grounds wanting

. . . . .

. . . Its operation in tending to *improve the quality of testimony* is twofold. Subjectively, it produces in the witness' mind a disinclination to falsify; first, by stimulating the instinctive responsibility to public opinion, symbolized in the audience, and ready to scorn a demonstrated liar; and next, by inducing the fear of exposure of subsequent falsities through disclosure by informed persons who may chance to be present or to hear of the testimony from others present. Objectively, it secures the presence of those who by possibility may be able to furnish testimony in chief or to contradict falsifiers and yet may not have been known beforehand to the parties to possess any information.

6 J. Wigmore, Evidence § 1834 (Chadbourn rev. ed. 1976) (emphasis in original). *See also In re Oliver, supra,* 333 U.S. at 270 n. 25, 68 S.Ct. at 506 n. 25.

In this case, the fact that a public trial would inhibit truthful testimony undercuts the rationale that public trials encourage truthful testimony. In this regard this case stands on an entirely different footing than the pretrial publicity cases, such as *Gannett Co. v. DePasquale, supra,* 443 U.S. 368, 99 S.Ct. 2898, where nothing suggests that publicity would inhibit truthful testimony. In pretrial publicity cases it is necessary to weigh *bias resulting from the publicity* against the encouragement of truthful testimony by open proceedings. *See also Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976). By contrast, Powers's claim makes it necessary to evaluate whether the rationale that public proceedings encourage truthful testimony applies in this case at all.

Likewise, Powers's claim places in a different light the potential for members of the public to come forward either in aid of the defendant's case or with information reflecting upon the testimony. The government concedes that Powers has been an informant against some offenders who may well have substantial propensity for violence. The potential for such witnesses to appear therefore may have a *deterrent* effect on truthful testimony. In pretrial publicity case no comparable deterrence would normally occur, no matter how prejudicial the publicity.

Pretrial publicity is indeed the norm. There is nothing so inherently dangerous about pretrial publicity that would support an inference of prejudice absent a showing of likelihood the publicity would have a prejudicial effect. But the disclosure of informing activities is not the norm. The danger of such disclosure is evident and may be inferred by the court from the fact of previous informing activities, especially involving serious crimes that may involve violence or subject participants to long prison sentences. The classic example is the case of undercover narcotics agent or informant. *See, e. g., United States ex rel. Lloyd v. Vincent,* 520 F.2d 1272 (2d Cir.), cert. denied, 423 U.S. 937, 96 S.Ct. 296, 46 L.Ed.2d 269 (1975).

On the basis of Powers's *in camera* testimony, it seems inescapable to me that the man would be deterred from testifying about activities as an informant. The trial court made no finding that satisfies me the danger is not really great enough in this case to have a deterrent effect. The court noted evidence that Powers may be generally known as an informant. To me a general reputation as an informant is one thing; definite public knowledge that Powers informed on a particular person and contributed to a particular punishment is quite another thing. General reputation seems to me much less likely than a report of times and places of actual informing

activities to induce violence in revenge. Moreover, Powers's general reputation for informing may well make disclosure more, not less, dangerous to him, for this reputation would surely prompt Powers's former associates to keep an eye on reports of his trial. *Cf. Pechter v. Lyons*, 441 F.Supp. 115 (S.D.N.Y.1977) (refusal to close deportation hearing of alleged war criminal).

I think that Powers has shown that requiring him to testify in public to his informing activities would inhibit rather than further the search for truth in this case. That basis for the open trial tradition therefore does not apply to the testimony concerning his informing activities. The court made no finding that would support a contrary conclusion, but instead concluded only that Powers had not adequately shown danger of actual harm. In doing so, the court applied a "clear and present danger" test and placed the burden on Powers to demonstrate the danger by clear and convincing evidence. (The trial court apparently adopted the "clear and present danger" test upon Powers's urging; however, he did not ask for the burden of persuasion to be placed upon him.) The "clear and present danger" test was developed to determine when speech becomes so inseparably integrated with action it falls within the government's power to regulate; thus, that test shows what speech is protected, and only indirectly what government action is prohibited. *See, e. g., Gitlow v. New York*, 268 U.S. 652, 672, 45 S.Ct. 625, 632, 69 L.Ed. 1138 (1925) (Holmes, J., dissenting). I think a much more apt analogy for the infringement of appellant's due process rights is the chilling effect test which determines when government action deters the exercise of fundamental rights. *E. g., National Ass'n for the Advancement of Colored People v. Alabama*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). Undisputed testimony that a defendant has been an informant and that some of his associates at the time were prone to violence is enough to demonstrate to me that the defendant would reasonably be deterred from putting on evidence about informing activities.

I do not suggest that the rationale for public trials disappears any time a party claims that public proceedings will inhibit testimony. As the majority points out, a defendant does not have a right to waive a public trial regardless of circumstances. *See* 321 & n. 4, *citing Singer v. United States*, 380 U.S. 24, 35, 85 S.Ct. 783, 790, 13 L.Ed.2d 630 (1965). Thus, a defendant must make an evidentiary showing of something which has a reasonable tendency to inhibit truthful testimony. There must also be special circumstances to suggest that closure would not increase the likelihood of untruthful testimony; in this case the prosecution concedes that Powers previously did act as an informant. Moreover, if the effort to close any part of a trial is opposed, I think the testimony in question must be so critical to the case of the party seeking closure that the inhibitive effect of non-closure would result in denial of some fundamental right, in this case Powers's due process rights in presenting evidence critical to his defense.

The trial court may have considered the proposed general stipulation of informing status adequate to give Powers's due process in this case, but I cannot agree. The particular details of Powers's previous activities undoubtedly would color the jury's impression of the activities for which he is now prosecuted. A stipulation lacks the pungency of live testimony. Therefore the general rule is that a party may refuse to stipulate and offer proof on a point admitted. "The reason for the rule is to permit a party 'to present to the jury a picture of the events relied upon. To substitute for such a picture a naked admission might have the effect to rob the evidence of much of its fair and legitimate weight.'" *United States v. Peltier*, 585 F.2d 314, 324 (8th Cir. 1978), *cert. denied*, 440 U.S. 945, 99 S.Ct. 1422, 59 L.Ed.2d 634 (1979), *citing Parr v. United States*, 255 F.2d 86, 88 (5th Cir.), *cert. denied*, 358 U.S. 824, 79 S.Ct. 40, 3 L.Ed.2d 64 (1958). *See also United States v. Brickey*, 426 F.2d 680, 686 (8th Cir.), *cert. denied*, 400 U.S. 828, 91 S.Ct. 55, 27 L.Ed.2d 57 (1970); 9 J. WIGMORE, EVIDENCE § 2591 & n. 2 (3d ed. 1940). Where the

proposed stipulation involves evidence critical to the defense of a criminal accused, this rule takes on significant due process implications.

A second general consideration supporting public trials is the effect on trial conduct. Public scrutiny tends to discourage arbitrariness and improprieties of court proceedings and to impress upon the judge, jury and other officers of the court the importance and seriousness of their task. "The right to a public trial is not only to protect the accused but to protect as much the public's right to know what goes on when men's lives and liberty are at stake, for a secret trial can result in favor to as well as unjust prosecution of a defendant." *Lewis v. Peyton*, 352 F.2d 791, 792 (4th Cir. 1965). While the potential disclosure of Powers's informant activities would tend to discourage truthful testimony by him about informing, disclosure would not tend to undermine this second rationale for open trials.

But this general consideration does not negate the due process concerns that favor giving Powers every fair opportunity to present testimony about informing activities in his defense, and it is evident that the two considerations can be accommodated. The closure of only those parts of the trial where Powers's testimony is taken relieves him of whatever danger would tend to discourage him from testifying. The remainder of the trial—voir dire, witnesses not testifying on the informant issue, and other proceedings that would not directly endanger Powers because of his testimony—should remain fully open to the public. Although Powers may be concerned that, for example, jurors or others necessarily witnessing the proceedings might after trial reveal the specifics of his informing activities, the trial court could minimize the danger by admonishing them to secrecy on this matter. *Cf. United States v. Sherman*, 581 F.2d 1358 (9th Cir. 1978). The trial court's converse concern that secrecy could not be preserved in an appeal presents no real problem, as the portions of the record relating to Powers's informant activities could be treated exactly the way his *in camera* testimony has been treated on this appeal. Therefore, while the need for public scrutiny of court proceedings forecloses any attempt to close the entire trial in this case, closure of only the testimony concerning Powers's informing activities allows public scrutiny while accommodating the due process considerations in allowing Powers a full opportunity to put on his defense. *See United States ex rel. Latimore v. Sielaff*, 561 F.2d 691 (7th Cir. 1977), *cert. denied*, 434 U.S. 1076, 98 S.Ct. 1266, 55 L.Ed.2d 782 (1978); *Doe v. Risher*, 2 MEDIA L.REP. (BNA) 1300 (D.C.Sup.Ct.1976).

Finally, the public has an interest not only in fair procedures but in knowing the substance of legal controversies. Persons who think themselves affected by the outcome or proceedings in a case have an interest in attending or reading reports of the trial. Criminal proceedings may have a deterrent effect on those contemplating crime or on abuses by police or other official powers. The public needs to know how its laws work or democracy might easily be reduced to a formality. All of these interests support keeping trials open generally. *See Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 491–93, 95 S.Ct. 1029, 1044–45, 43 L.Ed.2d 328 (1975).

In this case there even may be a particularly strong public interest in observing the proceedings. (Indeed, at least one newspaper opposed any closure below, although it does not pursue its interest in this court.) The fact that the defendant has been an informer for law enforcement agencies suggest to me that the public might have especial concern in the degree of police cooperation with criminal elements. On this record there does not appear to be any impropriety, but closed trials of informants might generally suggest to the public or press a potential for a whitewash of some unsavory dealings or conversely for a vendetta by the authorities to dispose of some shady involvement on the fringe or outside of the law. The public certainly has an interest in knowing more about the whole business.

I do not minimize the public's right to pursue such matters which I think have constitutional dimensions under the First Amendment guarantee of freedom of the press. *See generally Smith v. Daily Mail Publishing Co.*, 443 U.S. 97, 99 S.Ct. 2667, 61 L.Ed.2d 399 (1979); *Landmark Communications, Inc. v. Virginia*, 435 U.S. 829, 98 S.Ct. 1535, 56 L.Ed.2d 1 (1978). But Powers is entitled to a fair trial , and the press must find its sources elsewhere if its presence at the trial would deny the defendant due process. *Gannett Co. v. DePasquale, supra*, 443 U.S. at 378, 99 S.Ct. at 2904; *id.* 443 U.S. at 398, 99 S.Ct. at 2915 (Powell, J., concurring); *id.* 443 U.S. at 439, 99 S.Ct. at 2936 (Blackmun, J., dissenting); *Sheppard v. Maxwell, supra*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600; *Estes v. Texas, supra*, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543.

The result I would reach, that particular testimony by Powers or others concerning the specifics of his past informing activities may be closed to the public, is not at all unprecedented. Limited closure by trial courts of specific proceedings has been upheld where appropriate not only to protect the defendant's due process rights but also on the motion of the prosecution over the defendant's objection, where the court has found compelling reason to do so. In particular there is a line of cases in which trials have been closed to protect the identities of police informants while they testify at trial. *E. g., United States ex rel. Lloyd v. Vincent, supra*, 520 F.2d 1272; *People v. Hinton*, 31 N.Y.2d 71, 334 N.Y.S.2d 885, 286 N.E.2d 265 (1972), *cert. denied*, 410 U.S. 911, 93 S.Ct. 970, 35 L.Ed.2d 273 (1973). I do not say that these cases satisfy me that a trial can be closed over the defendant's objection without violating the Sixth Amendment's clear language affording the defendant a right to a public trial. But the cases closing informant's testimony on the prosecution's motion certainly indicate that the interests of a party or a witness in this kind of case may require closure in the absence of a specific statutory or constitutional provision prohibiting closure.

Notably, in at least one of the informant cases, the court closed the testimony on the mere showing that the witness had been an informant. *United States ex rel. Lloyd v. Vincent, supra*, 520 F.2d at 1275. Other cases of closure over the defendant's objection include: *Stamicarbon, N. V. v. American Cyanamid Co.*, 506 F.2d 532 (2d Cir. 1974) (closure of criminal contempt hearing to protect trade secrets); *United States v. Bell*, 464 F.2d 667 (2d Cir.), *cert. denied*, 409 U.S. 991, 93 S.Ct. 335, 34 L.Ed.2d 258 (1972) (court cleared during pretrial proceedings to protect the secrecy of the government's "skyjacker" profile which was the subject of testimony); *United States ex rel. Bruno v. Herold*, 408 F.2d 125 (2d Cir. 1969), *cert. denied*, 397 U.S. 957, 90 S.Ct. 947, 25 L.Ed.2d 141 (1970) (court cleared for one day of all spectators to protect prosecution witness from intimidation); *Harris v. Stephens*, 361 F.2d 888 (8th Cir. 1966), *cert. denied*, 386 U.S. 964, 87 S.Ct. 1040, 18 L.Ed.2d 113 (1967) (closure to protect rape victim from public scrutiny during her testimony concerning the crime); *Reagan v. United States*, 202 F. 488 (9th Cir. 1913) (*simil*); *United States ex rel. Smallwood v. LaValle*, 377 F.Supp. 1148 (D.C.), *aff'd*, 508 F.2d 837 (2d Cir. 1974), *cert. denied*, 421 U.S. 920, 95 S.Ct. 1586, 43 L.Ed.2d 788 (1975) (closure during testimony of prosecution witness to avoid intimidation); *Hogan v. State*, 191 Ark. 437, 86 S.W.2d 931 (Ark. 1935) (closure during testimony of rape victim); *Lowe v. State*, 141 Ga.App. 433, 233 S.E.2d 807 (1977) (closure during testimony of rape victim); *People v. Hagan*, 24 N.Y.2d 395, 300 N.Y.S.2d 835, 248 N.E.2d 588, *cert. denied*, 396 U.S. 886, 90 S.Ct. 173, 24 L.Ed.2d 161 (1969) (closure to prevent intimidation of witness to assassination of Malcolm X). Although enumerating cases does not of course demonstrate their correctness, the above cases indicate that at least partial closure of a trial has been considered within the discretion of trial courts.

In at least two cases comparable to this one some closure has been permitted on the defendant's motion. In *Kirstowsky v. Superior Court*, 143 Cal.App.2d 745, 300 P.2d 163 (1956), the defendant, accused of mur-

dering her husband, sought to defend by presenting evidence that her husband had forced her to commit repugnant sexual acts. The trial court found that she was psychically unable to testify in public about the sexual acts and ordered the trial closed. In *State v. Poindexter*, 231 La. 630, 92 So.2d 390 (1956), the Louisiana Supreme Court held it reversible error for the trial court to refuse to exclude spectators whose presence would intimidate a defense witness. *Cf. United States v. Rios Ruiz*, 579 F.2d 670, 674–75 (1st Cir. 1978). *See also Commonwealth v. Principatti*, 260 Pa. 587, 104 A. 53, 57–58 (1918). *But see State v. Velasquez*, 76 N.M. 49, 412 P.2d 4, *cert. denied*, 385 U.S. 867, 87 S.Ct. 131, 17 L.Ed.2d 95 (1966).

I do not mean to indicate that courts have been undivided on the difficult issues touched on by this case: under what circumstances and to what extent a trial may be closed in derogation of our tradition of public trials. On the contrary, a considerable diversity of opinion exists. *See, e. g., United States v. Cianfrani*, 573 F.2d 835 (3d Cir. 1978); *United States ex rel. Laws v. Yeager*, 448 F.2d 74 (3d Cir. 1971), *cert. denied*, 405 U.S. 976, 92 S.Ct. 1201, 31 L.Ed.2d 251 (1972); *United States v. Kobli*, 172 F.2d 919 (3d Cir. 1949); *Tanksley v. United States*, 10 Alaska 443, 145 F.2d 58 (1944); *Davis v. United States*, 247 F. 394 (8th Cir. 1917); *Commercial Printing Co. v. Lee*, 262 Ark. 87, 553 S.W.2d 270 (1977); *State v. Schmit*, 273 Minn. 78, 139 N.W.2d 800 (1966); *People v. Jelke*, 308 N.Y. 56, 123 N.E.2d 769 (1954); *E. W. Scripps Co. v. Fulton*, 100 Ohio App. 157, 125 N.E.2d 896, *dismissed*, 164 Ohio St. 261, 130 N.E.2d 701 (1955). *See generally* Annot., 39 A.L.R.3d 852 (1971); Annot., 4 L.Ed.2d 2128 (1960); Annot., 48 A.L.R.2d 1436 (1956); Annot., 156 A.L.R. 265 (1945); J. Cook, Constitutional Rights of the Accused, Trial Rights §§ 100–103 (1974); Note, 91 Harv.L.Rev. 1899 (1978); Note, 1966 Wash.U.L.Q. 458; Comment, 52 Mich.L.Rev. 128 (1953).

In this case, we are presented with, in my opinion, a relatively narrow issue of the need to close a trial to allow a defendant to put on the kind of informant defense which Powers seeks to present to the jury. In my view, this case presents a very different issue than would a case of closure to prevent pretrial publicity. In my opinion, different questions would be presented if the government had evidence to controvert Powers's assertion that he was an informant, or if Powers's claim were that he was afraid to testify that someone else had committed the crime with which he was charged. Such claims may well exemplify the kind of proceeding in which publicity serves an essential function of encouraging truthful testimony. In this case, however, the trial court expressly found that "the prosecution would never consent to the closure because the issue before the Court focuses on a possible defense to the prosecution's charges against the defendant." As discussed above, I think that Powers has made sufficient showing that closure of certain testimony is required if his trial is to be a "search for truth." The stipulation proposed by the trial court is clearly inadequate to present his case effectively to the jury. Therefore, I conclude that Powers's right to due process compels closure of testimony by Powers or by others about Powers's informing activities. I would not, however, close proceedings other than testimony on these informing activities.

I would therefore treat this appeal as a petition for writ of mandamus and grant the petition.